### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**Davidson, Sochor, Ragsdale & Cohen, LLC**
37 Tamarack Circle
Skillman, NJ 08558
Attorneys for Defendants Kevin Fries and Rhonda Lea Kirk-Fries
(609) 924-7179; Fax (609) 683-9501

| | |
|---|---|
| CHARLES NOVINS, ESQ., P.C. and CHARLES NOVINS, personally, <br><br> Plaintiffs, <br><br> v. <br><br> KEVIN A. CANNON, KEVIN MICHAEL FRIES, JIM KELSO, RHONDA LEA KIRK FRIES, VINCENT LAMB, CARL R. OSTERWALD, ET AL., <br><br> Defendants | Civil Action: 3:09-cv-5354 <br><br> BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER F.R.C.P. 12(b)(6) <br><br> **RETURNABLE FEBRUARY 16, 2010** <br><br> **ORAL ARGUMENT REQUESTED** |

---

### BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER F.R.C.P. 12(b)(6)

---

On the Brief: Richard A. Ragsdale

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . .   ii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . .   1

SUMMARY OF GROUNDS FOR DISMISSAL . . . . . . . . . . .   1

ANALYSIS OF THE COMPLAINT'S ALLEGATIONS . . . . . . .   2

ARGUMENT

I.    THE COMPLAINT LACKS A FUNDAMENTAL ELEMENT OF THE
      CAUSE OF ACTION OF DEFAMATION—THE AUTHOR . . . . . . .   4

II.   PLAINTIFF'S COMPLAINT DOES NOT SATISFY THE
      REQUIREMENTS OF THE *DENDRITE* OPINION . . . . . . . . .   5

III.  THE COMMUNICATIONS DECENCY ACT OF 1996 BARS
      DEFAMATION CLAIMS AGAINST REPUBLISHERS OF
      DEFAMATORY CONTENT . . . . . . . . . . . . . . . . . .   8

      CONCLUSION . . . . . . . . . . . . . . . . . . . . . .   13

---

ATTACHMENT: COPY OF NOVINS COMPLAINT MARKED UP TO SHOW   1-19
      CONSECUTIVE COUNTS, PAGE NUMBERS, ETC. . . . . . . . .

EXHIBIT A TO COMPLAINT—FEBRUARY 12, 2008 INTERNET POST . .   17-18

CASE INFORMATION STATEMENT FILED WITH COMPLAINT . . . . .   19

## TABLE OF AUTHORITIES

Page

### CASES

*Barrett v. Rosenthal*, 40 *Cal.4*[th] 33 (2006)                                    9, 10

**Columbia Ins. Co. v. Seescandy.com**, 185 *F.R.D.* 573
    (N.D.Cal. 1999)                                                                 6

*Costello v. Ocean County Observer*, 136 *N.J.* 594,                               8
    606-607 (1994).

*Dendrite International, Inc. v. John Doe No. 3*, 342                               2, 5-8,
    *N.J.Super.* 134 (App. Div. 2001)                                              11-12

*Donato v. Moldow*, 374 *N.J.Super.* 475 (App. Div.
    2005)                                                                          11-12

*Green v. American Online (AOL)*, 318 *F.3d* 464 (3d Cir.
    2003)                                                                          9, 11

*Zeran v. American Online*, 129 *F.3d* 327 (4th Cir. 1997)                       9, 11

*Zoneraich v. Overlook Hosp.*, 212 *N.J.Super.* 83 (App.
    Div.), *certif. den.*, 107 *N.J.* 32 (1986)                                    4

### STATUTES

Communications Decency Act of 1996 ("CDA"),
    47 *U.S.C.* ¶ 230.                                                             2, 8-11

### COURT RULES

*F.R.C.P.* 12(b)(6)                                                                9, 12-13

*Rule* 4:6-2(e)                                                                    6, 11,
                                                                                   13, 16

## STATEMENT OF THE CASE

Plaintiffs, Charles Novins, Esq., P.C. and Charles Novins, Esq. individually ("Novins" herein), allege Internet defamation by way of a single Internet "post" on February 12, 2008, claimed to have been authored by 9 individual defendants.[1] The sole defamatory statement for which Novins sues is attached to the complaint as Exhibit A.

This defamation is an Internet post, purportedly from a "Kevin.Cannon" to certain Internet news groups, under date of February 12, 2008, claiming that Novins had hired drug addicts to work for his law firm. For the purposes of this motion only, the defamatory nature of the exhibit is assumed.

## SUMMARY OF GROUNDS FOR DISMISSAL

There are three reasons why Novins's complaint fails to state a cause of action. First, Novins has sued nine individual defendants for a single publication posted on the Internet. It's as though Novins were the victim of an auto accident and sued a dozen motorists randomly selected from an "enemies list" Rolodex. The complaint fails to state a cause of action because of its failure to identify the actual author of the post.

_____

[1] Aside from fictitious parties, Novins has inexplicably named three corporations and a Michigan community college as defendants without making any references to, or allegations against them, in the complaint.

Second, in Counts II through X Novins is suing the defendants as "republishers" of the defamation authored by the unknown author. This ground of liability is barred by the Communications Decency Act of 1996, 47 *U.S.C. Sec.* 230 *et seq.* ("CDA"). Simply stated, the CDA bars defamation claims against all parties except the original author of an Internet defamation.

Third, Novins's complaint fails to follow procedures that must be adhered to when a plaintiff wishes to sue an anonymous Internet poster for defamation. Those procedures were announced in *Dendrite International, Inc. v. John Doe No. 3*, 342 *N.J.Super.* 134 (App. Div. 2001). We will show below that Novins's complaint fails to comply with *Dendrite* and must be dismissed on that ground as well.

## <u>ANALYSIS OF THE COMPLAINT'S ALLEGATIONS</u>

The complaint appears to have been hastily cobbled together under great time pressure. It has eight "Count Two"'s, one "Count One" and one "Count Three," and no page numbers. To overcome these confusions, we have re-cast the complaint (see copy attached hereto), as follows:

**Count I**   (Count One)    **vs.  Kevin A. Cannon**

> 2. Defendant **Kevin A. Cannon, o n February 13, 2008,** caused to be published a libelous publication in a world-wide forum, alleging Plaintiffs law firm was staffed by drug addicts, and that Plaintiff personally was a person of ill repute. **A copy of this**

2

publication is attached as Exhibit "A" and
was repeatedly published numerous times
thereafter by the Defendant, Kevin A.
Cannon, with specific intention of harming
the Plaintiff's practice, and also with the
intent to cause humiliation emotional
distress.

[Complaint, Page 2, paragraph 2.]

**Count II   (Count Two)      vs. Kevin A. Cannon**

5. Defendant **Kevin A. Cannon, o n
various dates within the preceding six
years,** caused to be published a libelous
publication in a world-wide forum, alleging
various instances of libel *per se* **and
various other instances of damaging libel**
regarding Plaintiff's law firm and that
Plaintiff personally was a person of ill
repute, **A copy of this publication is
attached as Exhibit "A" and was repeatedly
published numerous times thereafter** by the
Defendant, **Kevin A. Cannon,** with specific
intention of harming the Plaintiff's
practice, and also with the intent to cause
humiliation emotional distress.

[Complaint, Page 3, paragraph 5.]

The foregoing paragraph 5[2] of Count II forms the verbatim

heart of each of the remaining eight counts of the complaint,

which are against:

**Count III (Count Two)      vs.   Kevin Michael Fries**
**Count IV   (Count Three)    vs.   Jim Kelso**
**Count V    (Count Two)      vs.   Rhonda Lea Kirk Fries**
**Count VI   (Count Two)      vs.   Vincent Lamb**
**Count VII (Count Two)      vs.   Carl R. Osterwald**
**Count VIII (Count Two)      vs.   Rick Mather**
**Count IX   (Count Two)      vs.   Albert C. Young**
**Count X    (Count Two)      vs.   Sean Monaghan**

To summarize, Count I alleges that someone using the name

---

[2] Paragraphs 9, 13, 17, 21, 25, 29, 33 and 37 are virtually
identical but for the identity of the defendant.

3

Kevin A. Cannon published an offending post on the Internet on February 12, 2008 (attached to the complaint as Exhibit A).

All of the remaining nine counts allege that "Kevin A. Cannon" and the eight other individual defendants republished or "re-posted" Exhibit A "on various dates within the preceding six years" and "numerous times thereafter." In other words, they were republishers.

**ARGUMENT**

I.   **THE COMPLAINT LACKS A FUNDAMENTAL ELEMENT OF THE CAUSE OF ACTION OF DEFAMATION—THE AUTHOR.**

In *Zoneraich v. Overlook Hosp.*, 212 *N.J. Super.* 83 (App. Div.), *certif. den.*, 107 *N.J.* 32 (1986), the plaintiff simply alleged in a single paragraph that the defendant had willfully and maliciously slandered and defamed her. There was no "to whom, what, where or why" to the allegation.  The court there said:

> . . . a plaintiff must plead facts sufficient to identify the defamatory words, <u>their</u> <u>utterer</u> and the fact of their publication.  A vague conclusory allegation is not enough.
> \* \* \* \* \*
> <u>The</u> <u>need</u> <u>to</u> <u>plead</u> <u>a</u> <u>cause</u> <u>of</u> <u>action</u> <u>for</u> <u>defamation</u> <u>is</u> <u>not</u> <u>avoided</u> <u>by</u> <u>telling</u> <u>defendants</u> <u>to</u> <u>seek</u> <u>a</u> <u>more</u> <u>definite</u> <u>statement</u> <u>or</u> <u>discovery</u>. A plaintiff may be permitted to bolster a defamation cause of action through discovery, but not to file a conclusory complaint to find out if one exists. Such a complaint must be dismissed.

*Zoneraich v. Overlook Hosp.*, 212 *N.J. Super.* 83, 101-102. [emphasis supplied]

4

Mr. Novins's complaint suffers from the logical impossibility of having nine individual defendants charged with authorship of a single discrete Internet Post made on February 12, 2008. By its terms, this complaint cannot stand as adequately identifying the author/publisher of the February 12, 2008 defamatory post.

## II. PLAINTIFF'S COMPLAINT DOES NOT SATISFY THE REQUIREMENTS OF THE *DENDRITE* OPINION.

In *Dendrite International, Inc. v. John Doe No. 3*, 342 *N.J. Super.* 134 (App. Div. 2001), the Appellate Division dealt with the problems presented by anonymous, or pseudonymous, Internet postings.

Dendrite International is a publicly traded company. Its business operations were the subject of Internet postings on a business news site hosted for that purpose by Yahoo. Dendrite filed suit against some 14 anonymous John Doe defendants for various causes of action allegedly arising from their postings on the Yahoo site. In particular, Dendrite claimed that John Doe No. 3 had defamed it by falsely alleging that management was "shopping" the company and that it had improperly changed its income recognition procedures to inflate sales. *Id*. at 145–146.

Since most of the participants in the Yahoo Dendrite bulletin board used pseudonyms unrelated to their actual identities, Dendrite sought leave to conduct discovery as to the identity of John Does 1-4. The trial court granted the request

5

as to John Does 1 and 2, but denied the request as to John Does 3 and 4. Dendrite appealed the order as to John Doe 3. *Id.* 146-147.

The Appellate Division affirmed the denial of Dendrite's application to discover the identity of John Doe 3. The court first recognized the important First Amendment protection afforded to anonymous speech, and the even broader protection under the Article I, para. 6 of the New Jersey Constitution. *Id.* at 148-149. The court then relied substantially upon a four-part test enunciated in *Columbia Ins. Co. v. Seescandy.com,* 185 *F.R.D.* 573 (N.D. Cal. 1999) to deny Dendrite's application to compel disclosure of the identity of John Doe No. 3. See *Dendrite,* 342 *N.J. Super.* at 150—153.

Because of the importance of the questions posed by Dendrite's application, the Appellate Division adopted its own four-part guidelines to govern these cases (none of which have been complied with by Mr. Novins), set forth at 342 *N.J. Super.* at 141-142.

The first involves giving notice to the anonymous posters. The second requires the plaintiff to " . . . identify and set forth the exact statements purportedly made by each anonymous poster . . ." The third requires the court to carefully review the complaint to see if it can survive a motion to dismiss (R.4:6-2(e)), <u>and</u> whether the plaintiff has produced ". . .

6

sufficient evidence supporting each element of its cause of action, on a prima facie basis . . ."

Finally, _if_ the court finds a prima facie case has been established, ". . . the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."

In other words, even a prima facie case may not be sufficient to compel an Internet service provider ("ISP") to disclose the identity of the author.

Notably, the Dendrite application with respect to John Doe No. 3 was denied because Dendrite presented no credible allegations or evidence that it had suffered any damage (342 _N.J. Super._ at 154-159. It is evident that the trial court and Appellate Division refused to accept general or conclusory allegations of damage. While this is not the primary ground upon which this motion is based, we would suggest that the allegations of "proof" of damage put forth by Dendrite are far more substantial than Novins's allegations of damage in paragraph 3 of the complaint.[3] This is sufficient ground, standing alone, to dismiss the complaint.

What is striking about Novins's complaint is its utter lack

---

[3] These are repeated in paragraphs 6, 10, 14, 18, 22, 26, 30, 34 and 38 of the complaint.

of compliance with *Dendrite*. Instead of filing against John Does as the first step in determining the identity of the author of the February 12, 2008 post, Novins has proceeded against nine individuals as to whom he has no proof or information whatsoever that they are the authors of the that post. That being the case, he cannot and has not complied with any of the four *Dendrite* guidelines.

### III.  THE COMMUNICATIONS DECENCY ACT OF 1996 BARS DEFAMATION CLAIMS AGAINST REPUBLISHERS OF DEFAMATORY CONTENT.

The passage of the Communications Decency Act ("CDA") of 1996 brought a dramatic change to the law of defamation on the Internet. Prior to adoption of the CDA, it was seldom a defense to defamation to say that one had simply repeated or "republished" what someone else had said. The principle is stated by the New Jersey Supreme Court as follows:

> Generally, the law of defamation provides redress against a party that reprints defamatory statements. A claim that "information [was] obtained from another source will not relieve [defendants] of liability." *Lawrence v. Bauer Publishing & Printing Ltd.*, 89 *N.J.* 451, 461, 446 *A.2d* 469, *cert. denied*, 459 *U.S.* 999, 103 *S.Ct.* 358, 74 *L.Ed.2d* 395 (1982). In most instances, therefore, to republish a defamatory statement, the reporter or newspaper must verify that a statement was spoken, and also that the substance of the statement is true. *Ibid.*

*Costello v. Ocean County Observer*, 136 *N.J.* 594, 606-607 (1994).

8

The CDA has basically abolished the above-quoted basis of common law defamation liability in the context of republishing defamatory publications on the Internet. Numerous cases have so held.

For example, the Third Circuit dismissed tort claims against AOL under the CDA on a Rule 12(b)(6) motion in *Green v. American Online (AOL)*, 318 *F.3d* 464 (3d Cir. 2003). The court there said:

> We also agree that Green's tort claims are subject to AOL's immunity under 47 U.S.C. § 230. Section 230 provides, in pertinent part, "No <u>provider</u> or <u>user</u> of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 also provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."

*Green v. American Online (AOL)*, 318 *F.3d* 464, 470. [emphasis supplied]

Prior to *Green*, in *Zeran v. American Online*, 129 *F.3d* 327 (4th Cir. 1997), the Fourth Circuit had found that AOL's policing of the content on its pages did not make AOL an "information content provider" beyond the protection of the CDA.

Of more direct application to this case, however, is the California Supreme Court's decision in *Barrett v. Rosenthal*, 40 *Cal.4*[th] 33 (2006). The court was there faced with determining whether people who email, re-distribute or re-post on the

9

Internet defamatory content originated by others are "users" under 47 *U.S.C.* § 230, and therefore entitled to the same immunity as "providers" such as AOL. The court's holding is as follows:

> We conclude that section 230 prohibits "distributor" liability for Internet publications. We further hold that section 230(c)(1) immunizes individual "users" of interactive computer services, and that no practical or principled distinction can be drawn between active and passive use. Accordingly, we reverse the Court of Appeal's judgment.
>
> We acknowledge that recognizing broad immunity for defamatory republications on the Internet has some troubling consequences. *Until Congress chooses to revise the settled law in this area,* however, *plaintiffs who contend they were defamed in an Internet posting may only seek recovery from the original source of the statement.*

*Barrett   v.   Rosenthal,* 40 *Cal.4th* 33, 39-40 (2006)[emphasis supplied]

It is significant that the California Supreme Court considered its decision to represent "settled law in this area." Thus, the court said:

> These provisions have been widely and consistently interpreted to confer broad immunity against defamation liability for those who use the Internet to publish information that originated from another source. The immunity has been applied regardless of the traditional distinction between "publishers" and "distributors.

*Barrett v. Rosenthal,* 40 *Cal.4th* 33, 39 (2006).

Any doubts about the controlling law in this case are dispelled by *Donato v. Moldow*, 374 *N.J. Super.* 475 (App. Div. 2005). Indeed, this case beautifully demonstrates the interplay between *Dendrite, supra* and the CDA. The plaintiffs in *Donato* sued the owner of a community bulletin board website (Stephen Moldow) and numerous John Doe defendants, who were anonymous posters on Moldow's bulletin board. The causes of action were for defamation, harassment and intentional infliction of emotional distress.

The trial court did two things: (1) it dismissed the complaint as to Moldow for failure to state a claim under *Rule* 4:6-2(e), the New Jersey analog to *F.R.C.P.* 12(b)(6); and (2) the trial court also quashed plaintiffs' subpoenas to compel the identities of the John Doe defendants because plaintiffs failed to comply with the *Dendrite* procedures (*Donato, supra*, 374 *N.J. Super.* at 481).[4]

The Appellate Division then surveyed the substantial case law that has interpreted Section 230 of the CDA, at 374 N.J. Super., pages 485-501, favorably citing *Zeran, supra, Green, supra* and many others cases. The Appellate Division concluded that Moldow was immune from liability because he was not the

---

[4] When plaintiffs abandoned their efforts to identify the Doe defendants by using the *Dendrite* procedures, they voluntarily dismissed the complaint with prejudice as to the Doe defendants. Leaving only the question of Moldow's liability for appeal. *Id. at 481.*

11

author of the offending bulletin board posts. *Donato* is controlling law in New Jersey, and is consistent with numerous federal and state decisions that bar Internet defamation actions against publishers, editors, re-publishers and other distributors. Only authors are subject to liability.

Similarly, *Donato* affirmed the necessity of plaintiffs' compliance with the *Dendrite* procedures as a condition precedent to the right to sue anonymous authors for Internet defamation.

An analysis of Counts II through X shows that Novins is claiming that the defendants are liable as re-posters or republishers of the February 12, 2008 post. This is demonstrated by Novins's allegations of unidentified republications of Exhibit A "within the preceding six years" and that it was "repeatedly published numerous times thereafter."[5]

Unless and until he complies with *Dendrite*, and determines who is the author of that post, the only possible complaint that he can properly file is against John Doe. Under *F.R.C.P.* 12(b)(6), Novins cannot state a claim, and he has not stated a claim, against the existing named defendants.

---

[5] Complaint, paragraphs 5, 9, 13, 17, 21, 25, 29, 33, and 37.

## CONCLUSION

Based on the foregoing authorities, and the content of the complaint, the plaintiffs have failed to state a cause for which relief may be granted. Under *F.R.C.P.* 12(b)(6), the complaint must be dismissed.

Respectfully submitted

**Davidson, Sochor, Ragsdale & Cohen, LLC**
Attorneys for Defendants Kevin Fries and Rhonda Lea Kirk Fries

By: _____
        Richard A. Ragsdale

January 11, 2010

13