# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**The Law Office of Charles Novins, Esq., PC**
**54 East Water Street**
**Toms River, NJ 08753**
**(732) 341-4077**
**Fax (732) 341-4490**
**ocnjlaw@gmail.com**

| | |
|---|---|
| **CHARLES NOVINS, ESQ., P.C. and** **CHARLES NOVINS, personally** | **Civil Action:  3:09-CV-5354** |
| **Plaintiffs** | |
| **v.** | |
| **KEVIN A. CANNON, KEVIN MICHAEL FRIES, JIM KELSO, RHONDA LEA KIRK FRIES, VINCENT LAMB, CARL R. OSTERWALD, ET AL.** | **ANSWERS TO INTERROGATORIES OF KEVIN CANNON** |
| **Defendants** | |

TO:
Joseph A. Manzo. Esq.
37 Rose Lane, P.O. Box 72
Rockaway, NJ 07866
Attorney for defendants Cannon and Osterwald
*By fax, 973-794-0090, and by regular mail*

1.
Sgt. James A. Pero (Ret.)
P.O. Box 4671
Toms River New Jersey:
Investigator who served Defendant Cannon, and was earlier present during speakerphone telephone conversation wherein Defendant Cannon leveled various threats against Plaintiff.

Members of the staff of Charles Novins, Esq., who were also libeled by Defendants'

posts, but chose not to pursue actions of their own.  They include:
Katherine DeFeis
Rebecca L. Sullivan
All may be reached through the Plaintiff's law firm.

Greg Heizler, Esq.
54 East Water Street
Toms River New Jersey

Adam E. Jacobs, Esq
1919 Kennedy Blvd.
North Bergen, New Jersey

Colleagues who discovered the libel online and expressed astonishment.

Gary Chrzan, see below, is also aware of the libel.
340 Grand Central Parkway
Bayville, NJ 08721

Also, several clients and former clients who cannot be named at this time due to
privileges that they hold.  I am currently seeking permission to be released from the
privilege.

Finally, many other defendants and their associates are hiding behind anonymity, so their
names will be revealed as they are discovered.

2.
All interrogatories were answered by Charles Novins, Esq.  Assistance with gathering
materials was provided by staff members of the firm.  All answers are based only upon
personal knowledge of Charles Novins, Esq., however, except as where indicated
otherwise.

3.
No experts have been retained or consulted so far.

4.
All public statements made on Usenet and the internet shall be available for use, and are
available to all parties as well as the general public.  All postings by the individual
defendants shall be treated as admissions and/or statements against interest, where
applicable.  At this time, however, further discovery is needed to determine which
postings are genuine.  I am also issuing subpoenas to procure further information from
internet providers and others.  All of this information will be shared with all defendants as
it is produced.  My investigator, James Pero, presumably maintains his own notes and
files for purposes of testimony where needed, but I do not have these.  Finally, several
defendants remain in hiding or still haven't been served.

5.
No tangible property at this time.

6.
None, except for internet and Usenet postings which are the subject matter of this action.

7.
Defendant Cannon has conceded repeatedly that he is partnered with one Gary Burnore and involved in a Usenet service.  Burnore also repeated the libel in message:
Message-ID: <fovml0$rnb$1@blackhelicopter.databasix.com>
The defamatory message was repeated through the service Burnore and Cannon jointly own and operate.

8.
None.

9.
All statements and identities of the people making them are privileged insofar as the statement was made in the context of a consultation or my provision of professional advice.  I am currently seeking waiver of the privileges in cases where it is relevant to this matter.

10.
This question addresses either work-product or documents already in the possession of the parties seeking them.  All other written communication involved people seeking my advice as counsel, and are therefore privileged.

11.
All such documents have been provided as part of the complaint and are publicly available having been published through many outlets, including Google, Inc., and various Usenet providers.

12.
Not applicable.

13.
Not applicable.

14.
The amount of damages are still being calculated as the libel is ongoing.  The defendants have all refused to retract their published libel, or publish an apology.

15.
Calculating damages will be part of my accountant's report. The method of calculation is unknown to me at this time.

16.
See previous answer.

17.
The offending posts are attached hereto.

A.) All substantive portions of the offending posts are defamatory

Regarding any and all requests to retract defamatory comments:

On January 30, 2009, I sent a letter to Defendant Cannon demanding he retract the defamatory comments posted.  A copy is attached as an exhibit hereto.

18.
a. None
b. N/A

19.
a. Privileged information.
b. Privileged information.

20.
There can be no other motive.  Cannon does not know me and has never met me outside of our Usenet interactions, most of which were characterized by valid disagreements. Moreover, Cannon has acted in concert with a well-known group of other libelers on the Usenet fora, all of whom work together.  When Cannon and others associated with him realized that they could not engage in contentious discussion civilly, they resorted to libelous postings because they felt inferior and had hurt feelings.

Moreover, to my knowledge, neither Cannon nor any other defendant had personal knowledge about my law practice and myself, and their comments regarding drug addiction and other ills were completely arbitrary and uninformed, as well as patently false.

Finally, all the defamatory comments were consistent with Cannon's and other defendants' tactics over many years in their preferred forum, "alt.usenet.kooks," wherein the members of the group would heap scorn, both real and imagined, upon participants arbitrarily selected for hatred.  And most of Cannon's posts have this signature attached:

COOSN-266-06-02374
Hammer of Thor, April 2005
PIERRE SALINGER MEMORIAL HOOK, LINE & SINKER June 2007
Barbara Woodhouse Memorial Dog Whistle X 2
#9 People ruining UseNet lits.
#6 Top Assholes on the Net lits.

#5 Most hated Usenetizens of all time
#15 AUK psychos and felons lits
#5 Cog in the AUK Hate Machine

Wherein he identifies himself as a "Cog in the AUK Hate Machine."

According to public postings in the Usenet group "AUK," Cannon has been a "net abuser" and part of the "hate machine" for many years.  Postings such as the portion above, indicate he is proud of his role.

21.
a. I cannot remember the specific clients who mentioned this, but the information is privileged subject to any client's release of the privilege.

b. Clients did variously mention the "drug addicts" defamation.

c. I cannot identify clients who were dissuaded from coming to me at all by the statements, but clients who did mention this were invariably those with internet access who searched for my firm on the internet and not through more traditional means.  They mentioned that after seeing the libel, they had to cross check with other sources before considering that the falsities were of insufficient concern to merit using our firm.

d. I cannot identify clients who never came to me.  No client ever terminated representation as a result of the false statements, to my knowledge.

e. Business revenues declined during the period during and after the libel was disseminated.  No formal calculations have yet been made and they will be supplied in the form of an expert accountant's report if and when necessary.

f. N/A

g. No e-mail communication is known to date.

22.
Records were not kept of potential employees interviewed, and therefore no records are available.  The comments referred to in the complaint were told to me by my staff.

23.
a. See question number one.

b. Unknown.

24.
The firm did not exist for five years prior to February 13, 2008.  The firm was incorporated o July 7, 2007, and was first doing business as a sole proprietor as of approximately February 1, 2007.  Please see the corporate documents attached as

exhibits.

The requested documents were not prepared, and the corporate type is an "S" corporation. Full statements regarding the requested information will be prepared when necessary and incorporated into an expert report.

25.
The firm did not exist for five years prior to February 13, 2008.  The firm was incorporated on July 7, 2007, and was first doing business as a sole proprietor as of approximately February 1, 2007.  Please see the corporate documents attached as exhibits.

The requested documents were not prepared, and the corporate type is an "S" corporation. Full statements regarding the requested information will be prepared when necessary and incorporated into an expert report.

26.
a.  I can only give estimates.

I generally work  more than ten hours daily, and six days weekly.  I take no vacations, ever, and I work about half of all major holidays.

Therefore, since February 13, 2008, I estimate that I have worked approximately 540 days.

b.  I take virtually zero sick days.  I was hospitalized twice during the stated period, resulting in about five lost days, but at least two of those days, my office "came to me" with my staff attending to me at the hospital.  All continuing legal education credits are taken either on weekends or after hours, except approximately two seminars, each during a work-day.  I belong to the New Jersey Bar Association, but I do not attend their meetings.  I do not attend political functions.  Most of my family is deceased and I am unmarried with no children.  I spend a lot of time in work in building the practice, by which I mean developing computer systems for processing cases and studying all relevant law.  I study new cases every single morning before work and have a subscription to a service which delivers New Jersey and federal case summaries to me by computer each morning.  I do engage a plethora of other intellectual pursuits interspersed with my practice each day, but I wear two hats in my practice - attorney and business manager. Many financial details, however, including all billing, taxes, collections, and all other administration, including hiring, interviewing, and firing, is handled by my office manager, Mrs. Sullivan.

c. See prior answer

d. Unknown, as these details are kept by Mrs. Sullivan.  I estimate, however, that half of my hours are not billed.

27.
All answers to question 27 can be calculated from my answers to the previous question.

28.
a. The only negative publicity of any sort was from the defamatory postings and statemenjts of the defendant.

b. During the specified period, only a single client ever terminated representation.  The name of the client is privileged.

c. See previous answer.

d. None.

29.
Too many to list, all of them arising from either the defendants in this case, or anonymous confederates posting to literally hundreds of virtual locations on the internet.

30.
Previously answered.

31.
All such requests for retraction are attached.  Included in their text is the dates and remaining information requested.  All of the attached requestes were written and caused to be mailed or delivered  by me.

32.
I made hundreds of requests to Google to remove defamatory posts - also in the hundreds - by this defendant and others.  Most such requests were not preserved, and in many cases companies such as Google offer a simple form-page, where one can click on a single item to complain of  "inappropriate postings."  So only Google would retain the record of all my complaints, as well as similarly situated internet companies.  I continue to produce such complaints.

33.
None at this time.