# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**The Law Office of Charles Novins, Esq., PC**
**54 East Water Street**
**Toms River, NJ 08753**
**(732) 341-4077**
**Fax (732) 341-4490**
**ocnjlaw@gmail.com**
_____

| | |
|---|---|
| **CHARLES NOVINS, ESQ., P.C. and** | |
| **CHARLES NOVINS, personally** | Civil Action: 3:09-CV-5354 |
| **Plaintiffs** | |
| v. | |
| **KEVIN A. CANNON, KEVIN** | |
| **MICHAEL FRIES, JIM KELSO,** | |
| **RHONDA LEA KIRK FRIES,** | |
| **VINCENT LAMB, CARL R.** | ANSWERS TO INTERROGATORIES |
| **OSTERWALD, ET AL.** | OF CARL & YVONNE OSTERWALD |
| **Defendants** | |

_____
TO:
Joseph A. Manzo. Esq.
37 Rose Lane, P.O. Box 72
Rockaway, NJ 07866
Attorney for defendants Cannon and Osterwald
*By fax, 973-794-0090, and by regular mail*

1. No one other than counsel.

2.

Rebecca Sullivan - Office Manager of Law Offices of Charles Novins, Esq., PC. She is familiar with most aspects of the case, including discovery of the initial libel. She also has spoken to various individuals who have seen the libel. She may be contacted only through this office. She is a married mother of two, with no history of drug or alcohol abuse, and a deacon at her local church.

Kathleen DeFeis - Paralegal at The Law Offices of Charles Novins, Esq., PC.  She is familiar with most aspects of the case, including discovery of the initial libel.  She also has spoken to various individuals who have seen the libel.  She may be contacted only through this office.  She is a married mother of three, with no history of drug or alcohol abuse, President of the local Parent-Teacher Association, and her husband is career-military and has fought in Iraq and elsewhere.

James Piro - President of Hawk Investigations, an independent licensed professional agency that frequently does contract work for the Law Offices of Charles Novins, Esq., PC.  He is familiar with most aspects of the case, including discovery of the initial libel.  He also has spoken to various individuals who have seen the libel. He effectuated service upon Defendant Cannon and will testify as to Cannon's comments at that time, which consisted in further libelous comments.  He can be contacted at his place of business:

HAWK INVESTIGATIONS, L.L.C.

PO BOX 4671

Toms River, New Jersey 08754

732-713-3666

All of the above, including myself, were present during a phone exchange, on speakerphone, wherein Kevin Cannon made various legal threats, including that he "knew NJ state troopers and would have [Novins] arrested for harrassment" [paraphrasing.]  Upon being served by Mr. Piro, Mr. Cannon then stated to Investigator Piro that Novins "was trying to extort" Cannon [paraphrasing, but Inv. Piro made notes on the comments at time of service.]  The legal threat in question was not considered actionable and was thus not pursued.  It was also thought by all to be false, and everyone within earshot laughed at Cannon's apparent attempt to duplicate his sad "Usenet persona" over the phone.  Although everyone laughed at him, all agreed he seemed afraid.

Various clients of The Law Offices of Charles Novins, Esq., PC., all of whom enjoy a privileged relationship with Mr. Novins, up to and including their identities.  Permission will need to be sought from each for them to be identified.

Gregory Heizler, Esq. - Mr. Heizler is a local attorney and frequently-appearing television personality on the cable network formerly known as "Court TV." He is familiar with the libel and will testify that it has been seen by himself and others and that it would likely have an impact in the legal community and among potential clients. He shares my address and can be reached there. His law firm is separate, however.

Greg Heizler, Esq.

54 East Water Street

Toms River New Jersey

Adam Jacobs, Esq. Is also familiar with the libel in question and was appalled by it personally and feared for my reputation. Mr. Jacobs has considerable background in issues of law and speech, and may be called to testify as both a fact witness and/or as an expert.

Adam E. Jacobs, Esq

1919 Kennedy Blvd.

North Bergen, New Jersey

All co-defendants listed in the complaint, some of whom have yet to be identified. By definition, what they know is to be discovered.

Google, Inc., which was named as a defendant but has now been released. The corporation did contact me via their counsel, and have participated in attempting to reduce defamatory content from their servers, not all of which is alleged to have been uttered by the named defendants.

Members of Comcast, Inc., have also contacted me in response to false complaints which were deemed baseless and were evidently made by certain of the defendants in this matter. This is yet to be confirmed.

3. No expert report has been prepared at this early stage of the case. Experts have been consulted in the areas of computer science and accounting, but the identities are privileged work products at this stage.

4.  N/A

5.  N/A

6.  N/A

7.  The sheer volume of such admissions and statements is overwhelming.  Most such statements and admissions were uttered by speakers whose anonymity has yet to be uncovered.  All such statements were publicly made, and available to anyone, including Defendants, but all such statements shall nevertheless be provided as discovered and collated as they are developed and received.

8.  See previous question and answer.

9.  Documents relating to Osterwald are attached.  Plaintiff reserves the right to add others as they are discovered.  Again, the sheer volume of Osterwald's postings preclude attaching all of them hereto.  A public accounting of Osterwald's known postings to the single forum at alt.usenet.kooks reveals postings in the tens-of-thousands.  *See, F.R.C.P.* 33(d)

10.  None to Plaintiff's knowledge at the present time.

11.  All of the matters inquired of are either privileged, work-product, and in some cases, both.

12.  The Law Office of Charles Novins, Esq., PC registered in New Jersey as a professional corporation on July 1, 2007.  The registered agent is Charles Novins.  The registered stockholder of 100% is Charles Novins, 54 E. Water Street, Toms River, NJ 08753.  See appendix "B" attached hereto.

13.  Tax returns will not be provided, because they contain privileged information, unless directed by the Court.  Plaintiff objects to the question as being harassing in nature and overbroad with respect to the purposes of discovery.  The information contained therein which is relevant to this case will be provided upon request, but the tax return records are filled with information which Plaintiff is entitled to keep private, and all such information will be provided for *in camera* inspection if ordered by the Court.

14.  See the previous answer.  The Federal and NJ tax returns of the plaintiff are privileged are will not be supplied unless under directive of the Court and the residential address of the Plaintiff will not be provided unless directed by the Court.  All communication shall be directed to the law firm at 54 E. Water Street, Toms River, NJ 08753.

15.  The computation of damages claimed by plaintiffs in the this matter was an information estimate and the total for damages has not been computed yet and will be supplied pursuant to consultation with expert accountants, if necessary.

16.  Pending further discovery, with regard to the identities, locations and postings of the defendants named in the complaint no accurate computation can be made regarding the allocation of damages made by each defendant named in

the complaint.

17. The information regarding clients as well as potential clients of the law firm is privileged information and can be revealed only where the client releases the attorney from the privilege. Therefore this information is privileged until clients supply written permission which has not yet been sought.

18. On February 12, 2008, defendant Carl R. Osterwald posted " Law Offices of Chares Novins hires drug addicts to fill your legal needs". Defendant Osterwald posted these comments under a false identity, "Art Deco," and to plaintiffs' knowledge, defendant Osterwald has no association or personal knowledge of Charles Novins, Charles Novins, Esq., PC, or any member of his staff. Mr. Osterwald, posting under the name of "Art Deco," had long been a member of the hate group "alt.usenet.kooks" and was well-known to have been associated with other defendants in the case, including Kevin Cannon, and the group's nominal leader, defendant Richard Lamb, posting as "Pinku-Sensei". *See* appendix "E" for other defamatory postings upon which Plaintiff will rely with respect to defendant Osterwald.

19. Please see answer to #18.

20. *See* appendix "E" for other defamatory postings upon which Plaintiff will rely with respect to defendant Osterwald. The publication of the complained-of defamatory comments were available to an audience consisting of anyone and everyone in the world with internet access. The publication was therefore worldwide and available to at least one billion people. The computer data is all publicly available. *See, F.R.C.P.* 33(d)

21. *See,* answer to Question #2. Plaintiff reserves the right to include others as they are discovered.

22. Computers and storage devices referenced in the questions are either no longer in use, no longer in existence, or currently unknown to the plaintiffs with respect to the question asked. The defamatory remarks made by defendants and which are the subject of this lawsuit are all made to public fora, all of them are archived by various Usenet providers and also in partial subset, by Google, Inc. The plaintiffs utilize and subscribe to the archives and services located at www.giganews.com. Documents specific to this case have been archived in part in an online account owned by the plaintiffs which is provided by www.dropbox.com, and this service maintains copies of that subset on the law firm computers at Charles Novins, Esq., PC. Further information regarding these computers is privileged information and also constitutes work product and will not be further disclosed except as required by Order of the Court. Also, *See, F.R.C.P.* 33(d)

23. The firm has no formal electronic data retention policy. For information regarding offsite archiving, please refer to #22.

24. No such reports have been prepared to date, and will be supplied if and when needed for this case. Tax losses were incurred in the most recent tax year, and properly circumscribed requests for this information - as opposed to the entire tax return - will be honored. See previous questions for objections as to the supplying of tax returns unredacted.

25. This information is being prepared internally by the firm at this time. The firm has a comprehensive marketing plan that was increased substantially after the defamation was published. This included television advertising (via Comcast networks), internet advertising (see, for example, www.tomsriveronline.com), and the firm's principle took various actions to understand the Google, Inc. search engine, and improve results of the firm's listings thereon.

26. There is no detailed financial report regarding the requested aspects and the firm does not normally prepare such reports. As previously stated, all reporting for purposes of this suit will be prepared and at this point constitute work product and need not be disclosed.

27. The question and details requested are unacceptable, constitute an invasion of privacy, and will be the subject of a motion for protective order; are improper and harassing; and seek to enable further defamation which has already occurred as referenced in question #18. As to 27 (h), no member of the firm has any familial relationship to Charles Novins.

28. *See* attached advertisement at appendix"D". The position was never filled.

29. All currently-known witnesses are listed in the answer to question #2.

30. (a) the specific nature of the question is preposterous but it is true to say that after the publication of the complained of statements, plaintiff was acutely aware of lies regarding his firm and members of his firm to a world-wide forum and felt that people would wrongly believe that the complained of lies may have truth. Moreover, any attempt by the plaintiff to counter the posted defamation would have thereby drawn more attention to the original lies. Plaintiff felt shamed, trapped and victimized by the defendants and anonymous others. All witnesses listed in question #2 were aware of plaintiffs' distress and were witnesses to the symptoms of such distress. (b) N/A (c) this questions asks for privileged information and will be the subject of a protective order. (d) The distress occurred at all times subsequent to the defamatory postings.

31. (a, b, c, d, e, f, g) no

32. (a, b) none  (c ) Charles Novins has produced numerous articles published in various media, both inside and outside of law. Publications have appeared in the New Jersey Law Journal, the National Law Journal, and various newsletters published by various legal organizations to which Mr. Novins has belonged during his 23 year legal career. Scant records

are kept of these publications by plaintiff.  They are all, however, publicly available, as they were written for public dissemination.  *See, F.R.C.P.* 33(d) (d) Charles Novins is a member of the New Jersey Bar Association and is not an officer.  He has been a member of NJSBA at all times during the existence of the Law Office of Charles Novins, Esq., P.C. (e, f, g, i) none  (h) New Jersey

33.  Most sections of this question involve privileged information and will not be answered.  Those sections include 33 (a, b, c, d, e, g).  As to 32 (f) the answer is no.  The law firm utilizes a series of subcontractors to assist in pursuing client's interests and the use of those subcontractors is part of the work product of those cases and protected by the privilege held by the clients in whose interests the subcontractors worked.

34.  I belonged to any number of Usenet groups in the sense that I "subscribed" to them on my computer; as I understand them, they are merely computer constructs, and there is no person at the other end of the group "running" it who is aware of the subscription.  The computer program merely directs your posts to that division, and highlights that division for reading.  Therefore, I "belonged" to no Usenet groups at all.  I did participate in discussions among others who'd pointed their computers, as I did, to this "channel," and had the ability to send messages on the channel and read them. Because all internet groups are somewhat ephemeral, having no real existence other than virtual, it is impossible for me to specify dates with any accuracy.  Usenet groups are, of course, mostly public fora, and my participation would have begun with the earliest posting, of which I have no recollection.

Posting names (e-mail addresses) during the period are:

atlasbugged@gmail.com

atlasbuggedbyspam@gmail.com

scificfan@gmail.com

I have no recollection of any others, though there may have been one or two.

35. A great deal of this information is privileged since it took place within the law firm, or occasionally with others who consulted me regarding Osterwald's defamatory and occasionally threatening behavior.  Since I spoke with them as potential clients, all conversations are privileged.  As to Yvonne Osterwald, I have never spoken of her to anyone, I know nothing about her except that she appears to exist.  However, my knowledge of this is based upon information from Carl Osterwald, who has demonstrated his willingness to lie with impunity and violate civil law, so I in fact have no direct

knowledge that Mrs. Osterwald exists.

36. I have had service with Comcast as far back as I can remember, at least during all periods relevant to this action. I have also had internet service provided by Verizon since February of 2007, approximately. Account numbers are confidential and privileged. I also do not personally know them as they are kept and paid for by others, including my office manager

37. Having been an attorney for almost a quarter-century, I possess only scant records for the period requested. In brief summary, my first employment after entering law school was with a number of private attorneys whose names I no longer recall, except for Thomas L. Irwin, Esq. I had a thriving "mini-practice" even before graduating law school by doing piece-work research and ghost brief writing for a number of judges and attorneys. I have not been in touch with any of them except Mr. Irwin for more than 20 years, and I have no idea where Mr. Irwin practices now, or where he lives, etc.

In 1990, I joined the Essex County Public Defender office in Newark, N.J. and worked as an Assistant Deputy Public Defender until leaving the office in 2001. My reason for leaving was that my pension had vested after 10 years, and I wanted to apply my skills in private practice. My immediate supervisor was whomever was the Deputy in the office at the time. I believe it was Patricia Kay, Esq., when I first arrived, and Michael Marucci, Esq., at the time I quit.

After that, I never had a job with any supervisor, except informally when I was an associate attorney at the firm founded by my father. This was Novins, York, and Pentony. Until starting my own practice in 2007, I worked freelance except for two years immediately prior at the "family" firm. That firm may be contacted at 732-349-7100. My reason for leaving was to start my own firm. Several others from the firm also left at the same time, including Pentony, to branch out with their own firms. Pentony was my direct supervisor.

38. Attached find all of my educational records of which I am still in possession, as well as my bar admissions, and other work-related certificates and awards. I am currently an attorney in good standing before the New Jersey and Federal Bars.

39. No one ever employed by the firm has ever "been addicted to any legal or illegal drug at any time in the person's life" as far as I am aware. I am also unaware of my staff's consumption of the listed substances and foods. The firm is a non-

smoking workplace.

40. Letters are attached asking the defamatory defendants to apologize and retract their statements. In order to offset the effects of the defamatory utterings, Plaintiff has been compelled to increase spending on attorney advertising. Since defendants have refused to accept responsibility for their damaging statements, and have in fact made spurious and frivolous counterclaims, Plaintiff has been damaged by having to expend time and costs attempting to hold defendants accountable.

41. There have been discussions of the mater, non-privileged, most of them in the forum of alt.usenet.kooks, and thus all public.

42. Alt.usenet.kooks is a usenet forum, which simply means it is a subdivision of the internet which is widely accessed. As such, it can have no purpose, philosophy, or mission. It is not a "site," so the person who has composed this question, in my view, is illiterate regarding computers and networks. Finally, the time I spend "on" usenet varies too greatly for me to even give an estimated answer to the question. However, I can say definitely that some weeks it is zero, especially when my duties as an attorney are pressing. Other weeks, I spend less than an hour, frequently for the purpose of monitoring further defamatory activity, and utilizing certain techniques to try to offset defamatory and anonymous postings.

# APPENDIX A:

# EDUCATIONAL AND EMPLOYMENT CREDENTIALS FOR PLAINTIFF

# APPENDIX E:

# OTHER DEFAMATORY POSTS BY DEFENDANT OSTERWALD

# APPENDIX B:

# CORPORATE CHARTER AND ARTICLES FOR LAW OFFICES OF CHARLES NOVINS

# APPENDIX C:

# WRITTEN COMMUNICATIONS BY PLAINTIFF DEMANDING THAT DEFENDANTS RETRACT DEFAMMATORY UTTERANCES

# APPENDIX D:

# CRAIGSLIST JOB POSTING