UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**The Law Office of Charles Novins, Esq., PC**
**54 East Water Street**
**Toms River, NJ 08753**
**(732) 341-4077**
**Fax (732) 341-4490**
**ocnjlaw@gmail.com**

---

| | |
|---|---|
| **CHARLES NOVINS, ESQ., P.C. and CHARLES NOVINS, personally** | Civil Action: 3:09-CV-5354 |
| **Plaintiffs** | |
| v. | |
| KEVIN A. CANNON, KEVIN MICHAEL FRIES, JIM KELSO, RHONDA LEA KIRK FRIES, VINCENT LAMB, CARL R. OSTERWALD, ET AL. | **REVISED ANSWERS TO INTERROGATORIES OF RICHARD "VINCE" LAMB PER COURT ORDER 8/16/2010** |
| **Defendants** | |

TO:    Dennis J. Duncan, Esq.

**ADDITIONS ARE IN BOLD**

1. Since June 17, 2007, I have been a sole practitioner, incorporated as set forth in the pleadings. I am currently an attorney in good standing before the New Jersey and Federal Bars. **The information provided in the Cannon Interrogatories is correct.**

2. To my knowledge the only individual contacted at Oakland Community College was Gary Casey and all communications with Mr. Casey are attached as Exhibit 1. I recall one or two phone conversations with Mr. Casey, but I do not recall their content, apart from matters

referenced in the written communications.  **The February 18 fax was attached previously, the allegation of omission is incorrect.  The September 17, 2007 communication was made by Plaintiffs and was inadvertently omitted**

3.  Gary Casey.

4.  James Piro - President of Hawk Investigations, an independent licensed professional agency that frequently does contract work for the Law Offices of Charles Novins, Esq., PC.  He is familiar with most aspects of the case, including discovery of the initial libel.  He also has spoken to various individuals who have seen the libel.  He can be contacted at his place of business:

HAWK INVESTIGATIONS, L.L.C.
PO BOX 4671
Toms River, New Jersey 08754
732-713-3666

I do not recall obtaining information regarding Defendant Lamb except publicly over the internet, prior to the initiation of suit.  After suit was filed, I retained Mr. Piro to locate Dr. Lamb, who appeared to be avoiding service.  A service retained by me to serve Dr. Lamb went to his house and was told by an unidentified individual that he did not live there.  A certified letter was sent to Dr. Lamb's house along with regular mail copy, and the certified copy was returned unclaimed, the regular mail not returned at all.  Exhibit 2.  After explicitly lying and hiding to avoid service, I was compelled to make inquiry online which is the reason his address was posted.  Finally, Dr. Lamb was served at his place of employment and filed a frivolous counterclaim over this event which was ultimately withdrawn by him.  (Paragraph 33 of the counterclaim, which  was withdrawn by Lamb, Exhibit 3.)  The withdrawal came only after I threatened to move against him and his attorney for fees arising out of the frivolous Counterclaim.  **This question requires no further clarification.  The objection interposes**

**further questions.  There was no order permitting that further interrogatory questions be asked nor answered.**

5.  None.

6.  None.

7.  I do not recall obtaining information regarding Defendant Lamb except publicly over the internet.  After suit was filed, I retained a private investigator to locate Dr. Lamb, who appeared to be avoiding service.  As of September, 2007 and October, 2007, I had no specific awareness of anything of Dr. Lamb's employment.  My October 3, 2007, letter, attached as Exhibit 1, demonstrates that I had no verifiable information, and I was seeking to obtain it by way of the inquiry to the college.  There were public postings to the internet which suggested his association with Oakland Community College but all postings were anonymous, unverifiable, and frequently posts were made with intentionally false information by members of the group with the purpose in mind of misleading anyone injured by the hate group which Dr. Lamb organized.

8.  Please see attached documents, Exhibit 1.  **This has already been clarified.**

9.  I have no knowledge currently, nor in the past, regarding Defendant Lamb's employment contract and it will be a subject of discovery.  **This has already been clarified.**

10.  None.  **This line of questioning is harassing, and if pursued, will be a subject of an application for sanctions.  If the question seeks information within the four-corners of the present case, then this question is clearly put forth in bad faith.  I am obviously responding to the plain meaning of the question.**

11. None.  **This line of questioning is harassing, and if pursued, will be a subject of an application for sanctions.  If the question seeks information within the four-corners of the**

**present case, then this question is clearly put forth in bad faith. I am obviously responding to the plain meaning of the question.**

12. Dr. Lamb was engaging in a broadly-public and organized smear campaign against numerous individuals; By injecting himself into a worldwide forum in this way he maintained less right of privacy nor much reasonable expectation of privacy . Because of his organized leadership of a group involved in spreading hate and generating defamation, anyone who was injured by said acts had every right to pursue and serve Dr. Lamb with legal process as I did. **The question has been answered as fully as possible.**

13. The college is an institution funded with tax dollars. Dr. Lamb's association with the college is publicly known.

14. Please see Plaintiff's Answer to Complaint wherein Lamb's counterclaim regarding violations of his privacy are denied.

15. The question cannot be answered because this would vary completely depending upon the person, where they work, what they did, and so on. The question is a hypothetical and therefore not specific to this case. **In this specific case, the poster in question was not a reasonable person, so I cannot comment further upon the question, other than to say that depending upon the circumstances, the matter would be decided by me depending upon the circumstances.**

16. I did publish a picture, and a home address that I had reason to believe were the property of the libelous internet poster who went by the name of Pinku-sensei. I was not certain of who was the person behind the identity, but whoever it was was in violation of civil law and the posting was simply to seek information to find out the person's identity for purposes of lawful service and process. I also object to this question as multi-part, and thereby in violation of the FRCP

provisions governing the number of questions permitted.  **The question has been answered as fully as possible.**

17. Yes.  Although I did not know it at the time, the information that I was seeking had been published on the internet repeatedly by anonymous posters.  All information as to who and when the publications took place is publicly available and voluminous in scope.  Please see *F.R.C.P.* 33(d).  **I am not in possession of these documents, I had only seen them online and copied them.  Researching the original source of these documents, out of thousands of Usenet posts, would be burdensome.  Please also see *F.R.C.P.* 33(b)(4).  The same revision applies to questions 18 and 19.**

18. Please see previous question.

19. Please see #17.  It is impossible for me to answer as to what others unknown to me "knew." I can only state that the information had been posted – by someone – previously on the internet.

20. I have no knowledge regarding what is in Dr. Lamb's mind, however I do have abundant evidence that he has organized and led an internet-based hate group and has indicated repeatedly that he is not easily offended.  Under his false internet identity, he specifically requested that a lawsuit be initiated against him.  See Exhibit 4, attached.  **This question requires no further clarification.  The objection interposes further questions.  There was no order permitting that further interrogatory questions be asked nor answered.  Exhibit 4 can be clarified via further discovery, depositions, or at trial, but the question has been answered.**

21. No.  **This question requires no further clarification.  The objection interposes further questions.  There was no order permitting that further interrogatory questions be asked nor answered.**

22. Defendant Lamb was the putative leader of an internet hate group, the explicit purpose of

which was to offend others. He participated in the group both as offender and target, and therefore I do not believe Defendant Lamb could be easily offended. Insofar as information about defendant Lamb was published, I definitely do agree that there was a public interest in awareness of the leader of a hate group, his activities regarding libel and slander, and in putting a stop to his activities insofar as they violate the criminal and civil law. All documents referenced herein are publicly available. Please see *F.R.C.P.* 33(d).

23. Plaintiff held a prominent position of notoriety in both online fora and with respect to offline print and combined publications. Plaintiff has been the author of numerous general interest and technical legal articles during and before the course of his 23 year career in law. **Plaintiff is not in possession of copies of most publications, which span over 25 years. The publications which are most recent have been provided in response to Defendant Osterwald's interrogatories and were supplied to counsel for Lamb.**

24. (omitted).

25. I do not recall ever making such a statement. However, see earlier questions and attachments which demonstrate that Dr. Lamb organizes and assists a hate group and had sought to avoid civil penalties by lying about his true identity and address. **The answer to the question is complete; This question requires no further clarification. The objection interposes further questions. There was no order permitting that further interrogatory questions be asked nor answered.**

26. I am not aware of having stated Dr. Lamb had committed any crime, nor am I aware of any writing whereby I implied that Dr. Lamb had committed any crime.**The requested clarification is simply argumentative. This question requires no further clarification. The objection interposes further questions. There was no order permitting that further interrogatory**

**questions be asked nor answered.**

27. The statement about which the question asks is unclear.

28. Any statements made by me that Defendant Lamb is associated with a hate group are natters of fact, opinion, and matters of public record. All such statements were made solely for the purpose of identifying the true nature of Dr. Lamb's actions and associating his true identity therewith. This was necessary to defend against his online attacks and those of his partners. **The question asked if my comments were made with "malice" and the answer was "no." This question requires no further clarification. The objection interposes further questions. There was no order permitting that further interrogatory questions be asked nor answered.**

29. Yes. All research was conducted on the internet using various search engines to gather previously published information. Later, after service was made on the Defendant, his attempts to escape service and lie about his identity tended to confirm the allegations that I had previously made. **I am not in possession of these documents, I had only seen them online and copied them. Researching the original source of these documents, out of thousands of Usenet posts, would be burdensome. Please also see *F.R.C.P.* 33(b)(4).**

30. See previous answer. **I am not in possession of these documents, I had only seen them online and copied them. Researching the original source of these documents, out of thousands of Usenet posts, would be burdensome. Please also see *F.R.C.P.* 33(b)(4).**

31. The posting by Lamb was libel per se, and clearly meant to damage the reputation of the Plaintiff both personally and professionally. **This matter was the subject of my initial complaint, which has now been dismissed as a matter of law. All confirmed bases for the allegations appeared in said complaint.**

32. These matters are privileged.  **The matters asked of concern conversations with clients.**

33. These matters are privileged.

34. Please see question #1.  **Several colleagues in the legal community, all named in Question 1, commented on finding various postings online referring to me, apparently libelous, and including the post complained of in my original complaint, portions of which were quoted by Defendant Lamb.**

35. The firm's finances declined precipitously from the time that the libel published by the various defendants first appeared up to and including the present time.  The damages appear to be continuing.  A breakdown of the damages in detail has not yet been prepared and properly redacted tax returns will be provided as proofs if requested.

36. After the publication of the complained-of statements, Plaintiff was acutely aware of lies regarding his firm and members of his firm to a world-wide forum and felt that people would wrongly believe that the complained-of lies may have truth.  Moreover, any attempt by the Plaintiff to counter the posted defamation publicly would have thereby drawn more attention to the original lies.  This was why Plaintiffs sought a private apology from Defendants numerous times before going ahead with legal action.  Plaintiff felt shamed, trapped and victimized by the Defendants and anonymous others.  The distress occurred at all times subsequent to the defamatory postings.

37. There has been no discovery yet given which proves or disproves whether Lamb posted the defamatory material shown in Exhibit A of the Complaint.  Dr. Lamb was clearly involved in the exchange which followed, and admitted online that he posted with numerous false identities.  He also stated that he wanted to be sued.  **Lamb said to me in response to my intention to pursue legal action that he wanted a "kooksoot" according to discovery provided by Lamb.  That**

**aside,** t**his question requires no further clarification. The objection interposes further questions. There was no order permitting that further interrogatory questions be asked nor answered.**

38. All investigatory materials were public and taken from Usenet postings prior to the initiation of suit. Thereafter, James Piro was asked to do investigatory checks on various people associated with the hate group in question led by Dr. Lamb. **The objection interposes further questions. There was no order permitting that further interrogatory questions be asked nor answered.**

39. I definitely did research applicable legal authority regarding the defamation that had occurred and potential legal remedies. The rest of this question seeks to violate the work product privilege and will therefore not be answered. **Counselor for Defendant Lamb is clearly uninformed as to when the time for appeal begins – please consult *F.R.C.P.* 54(b), as well as the Rules governing appellate procedure.**

40. In every particular aspect of the question, the answer is no.

41. None, except insofar as the "friends" are identified as Defendants in this pending lawsuit. Those investigations are the subject of work product privilege and will be revealed only as ordered by the Court. Moreover, the bulk of all such investigations are aimed at simply identifying perpetrators.

42. None.

43. None except a single photograph that was obtained online and is already in evidence.

44. The questions have all been answered by Charles Novins, Esq.

45. None.

46. None.

47. None, other than the publicly available archive of internet postings made by Dr. Lamb. **I am not in possession of these documents, I had only seen them online and copied them. Researching the original source of these documents, out of thousands of Usenet posts, would be burdensome. Please also see *F.R.C.P*. 33(b)(4).**

48. Numerous online admissions were made by Dr. Lamb. To my knowledge, all were made in Usenet groups such as <alt.usenet.kooks> and associated groups. They are publicly available and archived. **I am not in possession of these documents, I had only seen them online and copied them. Researching the original source of these documents, out of thousands of Usenet posts, would be burdensome. Please also see *F.R.C.P*. 33(b)(4).**

49. Numerous online declarations against interest were made by Dr. Lamb. To my knowledge, all were made in Usenet groups such as <alt.usenet.kooks> and associated groups. They are publicly available and archived. **I am not in possession of these documents, I had only seen them online and copied them. Researching the original source of these documents, out of thousands of Usenet posts, would be burdensome. Please also see *F.R.C.P*. 33(b)(4).**

50. I have taken no precautions to protect my "identify" primarily because the question is senseless. I do not understand the question. I am unable to answer the question without clarification of the term "handle". I am only casually familiar with the term "munged". If it refers to a slightly altered posting address used to avoid unwanted emails then I can answer that I have used "munging" on posted email addresses but cannot recall which ones. I have used both an alias and my real name in posting to Usenet. I have never harassed anyone, nor have I ever been accused of harassing anyone. To my knowledge, others have had substantial disagreements with me in a variety of internet fora; to produce all internet conversation would be impossible due to their volume and their

availability.  It is of no consequence to me if people are mean.  I am aware of the meaning of the word "people".  **The question is an example of an extreme compound question, designed as with most others here, to circumvent federal rules regarding "one question per question."  Nevertheless, I have answered this question to the best of my ability, and will not tolerate unprofessional objections such as "Stop playing games."  Having posted thousands of times to Usenet in multiple forums, the request that I identify every post is clearly designed to be harassing.  Finally, this again illustrates the failure to understand Judge Arpert's order, which allows for completing the alleged deficiencies, not for new or follow-up questions to be asked and answered.**

### CERTIFICATION

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


s/Charles Novins, Esq.                                August 26, 2010
**Charles Novins, Esq.
Plaintiffs**