UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES NOVINS and LAW OFFICES OF CHARLES NOVINS ESQ. PC,<br><br>                    Plaintiff,<br><br>          v.<br><br>KEVIN A. CANNON, et. al., <br><br>                    Defendants, | . Case No.  3:09-CV-05354-AET-DEA<br>.<br>.<br>.<br>.<br>. 402 East State Street<br>. Trenton, NJ 08608<br>.<br>.<br>.<br>. November 21, 2011<br>. 10:28 a.m. |

. . . . . . . . . . . . . .

PARTIAL TRANSCRIPT OF TRIAL
BEFORE HONORABLE ANNE E. THOMPSON
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff/           CHARLES NOVINS
Counter-Defendant:           54 East Water Street
In pro se                    Toms River, NJ 08853

For the Defendant/Counter-   DENNIS JOHN DUNCAN, ESQ.
Plaintiff Vincent Lamb:      385 Elm Street
                             Kearny, NJ 07003


For Defendant/Counter-       JOSEPH A. MANZO, ESQ.
Plaintiff Carl & Yvonne      37 Rose Lane
Osterwald:                   Rockaway, NJ 07866

Audio Operator:              Marlene Kalbach


 Proceedings recorded by electronic sound recording, transcript
             produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-Mail:  jjcourt@jjcourt.com**

**(609) 586-2311  Fax No.  (609) 587-3599**

**I N D E X**

Jury Charge                                                    32

                                                            **PAGE**

**WITNESSES:**

VINCENT LAMB
      Jury Questions by the Court                             30

CARL OSTERWALD
      Jury Questions by the Court                             30


**Exhibits**                              **Ident.**    **Evid.**

      Letter to Mr. Osterwald from          24          26
      Mr. Novins

      Mr. Osterwald's responding posts      24          27
      to Mr. Novins' letter

1  (Partial transcript as requested beginning at 10:28 a.m.)

2              (Outside the presence of the jury)

3          THE COURT:  All right, good morning.

4          MR. NOVINS:  Good morning, Judge.

5          THE COURT:  I have -- I guess you have received my

6  edited copy of the proposed jury charge.

7          MR. DUNCAN:  Good morning, Your Honor.

8          THE COURT:  Good morning.  Thank you for working over

9  the weekend and sending me your -- your work.

10         MR. MANZO:  You're welcome, Your Honor.

11         THE COURT:  You have before you now on your desks the

12 charge that I was planning to give and the verdict sheet.  I

13 really didn't change anything.  Based on your submissions, I --

14 Mr. Manzo sent me a lot that can be used for the punitive

15 damages.  I suppose Mr. Manzo's concern is the presumed

16 damages.

17         MR. MANZO:  Exactly, Your Honor.

18         THE COURT:  And my reading of the cases and Model

19 Jury Charge indicated to me, number one, the law is very

20 unsettled in this area.  The Supreme Court hasn't definitively

21 stated.  It would appear that the four levels of speech/slander

22 are slander.  Slander is not the same as defamation.  That's

23 the problem.  Slander has been treated separately, but no one

24 has divided defamation into that first four levels that would

25 presume damages.

4

1          And the way the cause of action now reads, defamation
2  is an attack upon reputation in which damages have to be shown.
3  Now that's what I see the case is saying, but the Supreme Court
4  just has not given us the guidance to give us the definitive
5  answer.  This is not the kind of lawsuit that general develops,
6  to be perfectly frank.
7          The few defamation lawsuits or even libelous/slander
8  lawsuits which you'll find in the cases are cases involving
9  political figures in the middle of a campaign where one
10 candidate says something nasty about the other candidate and
11 they go to the courthouse and sue.  That's the kind of case you
12 have.  You don't have private citizens suing in these cases of
13 any number.  So that's why the New Jersey law is so undeveloped
14 because there's so few cases.  And the few cases that we have
15 are from years, decades ago.  I -- this -- this does not
16 involve a public figure.  It doesn't involve a public issue.
17 These are private citizens.
18         So this is the charge and maybe the Supreme Court is
19 going to speak sometime soon.  I hate to think of trying this
20 case all over again, but I don't know what else I can do, but
21 do what I -- it seems to me the law is.
22         Now let me just say this.  This is why I'm glad to
23 see Mr. Duncan come in.  I've given a lot of thought to his
24 claim on behalf of Dr. Lamb, the interference with prospective
25 economic advantage.  That cause of action has as its fifth

1    element, the last element, damage and I'm going to reserve on

2    the Motion that Mr. Novins made with regard to that claim of

3    Dr. Lamb because it seems to me Dr. Lamb was not able to show

4    damage.  And that's an outright element.

5         He showed that the letters that Mr. Novins wrote were

6    put in his personnel file at the College.  And obviously it's

7    not a good thing, but when you look at the cases, it doesn't

8    seem to prove damage.  In fact, the letters from the College in

9    which they said we've investigated, we talked to Dr. Lamb, he

10   denies it.  We're satisfied, we're closing this out.  And then

11   verbally told him don't do anymore posting and stay away from

12   Mr. Novins and there was even a hearsay statement that slipped

13   out by Dr. Lamb that the College official had said to him,

14   Novins is crazy.

15        That's not damage to Lamb.  It showed just the

16   opposite.  It shows that the University belittled and

17   discredited Mr. Novins "interference," thought very little of

18   it.  And so for Dr. Lamb to hypothesize as to what harm he

19   thinks might happen, he thinks he might have diminished

20   opportunities to be a Chair in his department, he thinks he

21   might have diminished opportunity to be a Dean or whatever,

22   that's insufficient to prove that cause of action.

23        So we've already got it set to go to the jury with

24   regard to the, you know, the letters in the file.  I must be

25   honest with you, I don't -- I'm reserving on it and it may be

1  that I'm going to dismiss that claim.

2          So we're left with the defamation.  Yes?

3          MR. NOVINS:  I have two more matters I'd like to

4  address with respect to the charge, Judge.

5          THE COURT:  What's that?

6          MR. NOVINS:  There's a standard adverse inference

7  charge under New Jersey law on the website.

8          THE COURT:  Yes.

9          MR. NOVINS:  The adverse inference is failure to

10  produce a witness.

11          THE COURT:  Clawans charge.

12          MR. NOVINS:  Yes, Clawans, exactly, yes.  And I

13  believe it's appropriate with respect to Mr. Casey.  Mr. Casey

14  is a -- he's a big player in this as we get into the --

15  particularly the prospective economic damage aspect.  I

16  understand you're reconsidering whether to deal with that after

17  the jury has read the case, but I believe that he -- we have

18  that letter that came in indirectly over my objection that says

19  we've closed the investigation, we've talked to Dr. Lamb and so

20  on.  That was the letter that I had received from Dr. Casey.

21  I'm sorry, Mr. Casey.

22          And obviously, I've had no opportunity -- it's a

23  Sixth Amendment issue in my mind, hearsay that I've had no

24  opportunity to cross examine him or anything because they

25  didn't produce him.  My position is that under Clawans --

1          THE COURT:  I don't know why you objected to it.

2          MR. NOVINS:  Well I -- yes, Your Honor.  I appreciate

3    your advise on how to improve my case and I understand that.

4    I'm just saying that I think that the jury should -- I should

5    be able to say to the jury he's got -- he says that things were

6    put in his file, he says that all this stuff went on, he says

7    that the --

8          THE COURT:  You don't need to go any further.  I'm

9    not going to grant that.

10         MR. NOVINS:  Okay.

11         THE COURT:  You know, people brought the witnesses

12   they wanted to bring.  And you're all lawyers.  There's no

13   question that you're a hard-working, conscientious lawyer.

14         MR. NOVINS:  Thank you.

15         THE COURT:  I may have given you a hard time and

16   that's just my personality at this age, but there's no question

17   in my mind that all three of the lawyers in this case have

18   worked very, very hard on behalf of their clients, and have

19   really put their heart and soul into this case on behalf of

20   their clients.  No question in my mind.

21         So people have brought the witnesses that they

22   thought they needed.  One juror wanted to know why you didn't

23   bring somebody from your office.

24         MR. NOVINS:  That's right.

25         THE COURT:  But they didn't appreciate the fact that

1  you don't have an affirmative claim.  So it's really not

2  necessary to have somebody from your office because you're not

3  -- you're not making an affirmative -- you're not on the

4  offense at this point in this case.  You were just defending

5  and saying the history, this is how this thing involved.

6        In the case of the University, what is his name?

7        MR. NOVINS:  Mr. Casey.

8        THE COURT:  Casey?  Quite frankly, Mr. Casey -- I

9  don't think you were harmed by it, let's just say it and leave

10 it at that.

11       MR. NOVINS:  Okay, Your Honor.  I respectfully

12 disagree, of course, but I'm just -- I wanted to bring it to

13 your attention that I'm going to be talking to the jury about

14 -- among other things in my summation about how a lack of

15 evidence is -- can be just as important as putting evidence

16 forth.  And of course, I'm going to be making references like

17 that and I don't want to draw a Clawans objection suggesting

18 adverse inference if Your Honor isn't going to put it in the

19 charge.  So I wanted to just prepare for that, that my --

20       THE COURT:  There's no question that you may argue

21 that all you want, both sides, if you think that there are

22 missing witnesses.  But it's got to make sense and -- but I

23 don't -- see, a Clawans charge would say it would be expected

24 that the party would have brought in a witness to support this

25 claim, to clarify or support this claim.

1          MR. NOVINS:  As distinguished, if I may, from their

2   case is weak and that testimony -- there's no testimony from

3   him to support it.

4          THE COURT:  I conclude that Mr. Duncan certainly

5   realized what possibilities were available to him, but he

6   decided that the letters from Mr. Whatever his name is --

7          MR. DUNCAN:  Casey.

8          MR. NOVINS:  Casey.

9          THE COURT:  -- Casey were what he wanted to present

10  and he was not -- he did not think it in his interest to bring

11  Casey here to talk about whether, in fact, these letters from

12  Novins were going to harm Lamb's career.  He could do it, he

13  didn't do it and I, you know, I think you're entitled to argue

14  that, but I don't -- I rarely give a Clawans charge unless it's

15  real clear that the -- it can't stand without that.

16         MR. DUNCAN:  Your Honor, may I --

17         THE COURT:  The letter -- you know, if Casey came

18  here, he can't get away from what he said in those letters

19  which was, you know, we've investigated, we looked it over and

20  we conclude that this is -- this is over and done with, Mr.

21  Novins.  We're not interested in you anymore.  That's what he

22  said.

23         MR. NOVINS:  Yes.

24         THE COURT:  Then what's the point in bringing him?

25  Yes.

1          MR. DUNCAN:  I just wanted to add, Your Honor, also I

2     relied on 90 paragraphs of admissions in this case in

3     presenting this case to the jury which --

4          THE COURT:  Now what is it?  I've heard you and your

5     co-counsel refer to the long list of, what is it?  Admissions?

6          MR. DUNCAN:  Yes.

7          THE COURT:  What admission is it that you relied on?

8          MR. DUNCAN:  Well, some of them is he admitted that

9     he filed the lawsuit to get my client fired.  I mean, there's a

10    lot of --

11         THE COURT:  Well, it sure didn't accomplish anything.

12         MR. DUNCAN:  Well, I mean, I disagree with Your Honor

13    on the prospective advantage damages.  I mean, we can deal with

14    that after it goes to the jury, but the damages of the

15    prospective --

16         THE COURT:  Well, tell me what -- you know, I was not

17    a part of the pretrial.  So I must confess that I don't have

18    the same religious attitude toward whatever went before I --

19    before this case came to me.  What happened?  Mr. Novins, I'd

20    be interested to hear you say.

21         MR. NOVINS:  With respect to -- which aspect of it?

22         THE COURT:  How did you get yourself into a situation

23    where you've admitted the whole case, it would seem.

24         MR. NOVINS:  I filed an answer and I did not deny

25    each specific factual averment.  I just did a general denial

1 and ultimately Your Honor ruled that --

2          THE COURT:  No, not me.  I -- I followed what went on

3 in the state court.

4          MR. NOVINS:  No, this was Your Honor's ruling.

5          THE COURT:  Well, but it was a reflection of what had

6 happened in the state court.

7          MR. MANZO:  Correct.

8          THE COURT:  I did not --

9          MR. NOVINS:  That was the -- no, that was the --

10         MR. MANZO:  You're correct, Your Honor.

11         MR. NOVINS:  That was the default that reflected what

12 happened in the state court.

13         THE COURT:  Okay.

14         MR. NOVINS:  At federal court, I filed a -- the

15 answer that I had filed had made no factual --

16         THE COURT:  And you were required to do so.

17         MR. NOVINS:  As it turned out, my view of the law was

18 that I didn't have to, a general denial was sufficient, but

19 Your Honor ruled against me and I respect Your Honor's ruling.

20         THE COURT:  Well, some of these things happened by

21 way of a very rigid application of the rules and I'm not

22 backing out from them.  But on the other hand, it seems to me

23 you, looking at going to trial, would say to yourself, well,

24 wait a minute, I'm not admitting everything in those.  And it

25 seems to me -- I haven't heard you say anything about whether

1    or not you're stipulating to all of those averments.

2            MR. NOVINS:  Well, of course, Judge --

3            THE COURT:  In the answer.

4            MR. NOVINS:  -- the averments in there are talking

5    about other people's states of mind, that he did so because of

6    this and things that I couldn't admit to even if I had a way.

7    And since I was going to be taking the stand and cross examined

8    and testifying under oath, I have to tell the truth and if

9    something, let's say, is inconsistent with something that is

10   supposedly automatically admitted under your ruling, I have to

11   tell the truth.  I can't -- I can't simply adopt those

12   admissions and say, well --

13           THE COURT:  Well, all right.  You must have realized

14   by now, we've been with each other for a whole week --

15           MR. NOVINS:  Yes.

16           THE COURT:  -- that I simply see this as -- the case

17   comes in for trial before me.  I don't -- I don't think the

18   case would say, oh, everything's been admitted because there's

19   a default entered, but.  I have taken a different position.

20   I've taken a position where you present your case here in open

21   court.  I -- Mr. Manzo's shaking his head, I think he caught

22   on.

23           MR. MANZO:  I caught -- Your Honor, I'll tell you

24   what.  I'll be quite honest, I didn't understand it for the

25   first couple of days, but I saw what you were doing, I know

1  where you're going with this and I admire it.  I -- you have --

2  you have given Mr. Novins -- Mr. Novins every opportunity in

3  the world to try this case despite what may have previously

4  been said.  I understand where you're coming from.  Our

5  objections are noted should there be a problem.

6  　　　　　　　THE COURT:  But if there was a fact that you wanted

7  in, you knew to put it in now in this courtroom.

8  　　　　　　　MR. MANZO:  Yes.

9  　　　　　　　THE COURT:  Never mind relying on some stipulations

10  of counsel or -- because he -- I don't know what happened

11  before Judge Arpert.  Where were you?  Did you attend the

12  conference?

13  　　　　　　　MR. NOVINS:  All of them.

14  　　　　　　　THE COURT:  Well, what did you do sitting there?

15  　　　　　　　MR. NOVINS:  I -- Judge, I attempted to comply with

16  all of that stuff.  It was a bombardment of ridiculous requests

17  from the defendants and I tried as much as I could and Judge

18  Arpert ultimately thought that I wasn't cooperating in the

19  process, but I was.  That's all I can say.

20  　　　　　　　THE COURT:  But you were physically there?

21  　　　　　　　MR. MANZO:  Oh, yeah.

22  　　　　　　　MR. NOVINS:  In every case.

23  　　　　　　　THE COURT:  Because Judge Arpert is a very, very

24  reasonable, fine, fine Magistrate Judge.  I cannot conceive of

25  what in the world went on that you would sit there and Judge

1  Arpert has written "Plaintiff did not participate in the

2  preparation of this order."  What were you thinking about?

3          MR. NOVINS:  Well, as you know, Judge, it happened

4  over a three-day period.  I did submit my own.  I did

5  participate, but he ruled as a matter of law I didn't.  I

6  submitted the first one, in fact.

7          THE COURT:  Is there anything -- well, it doesn't

8  matter.

9          MR. MANZO:  I want to add -- I do want to add

10 something, Your Honor, and then Mr. Duncan will speak briefly

11 because what he says is a blatant misrepresentation.  We had to

12 struggle through what was -- I can't characterize it as

13 anything other than discovery hell with this guy, okay.  This

14 -- this is in evidence, it's Exhibit 41, it tells you

15 everything you need to know about Charles Novins.

16          Here's the thing.  He admitted to saying this.

17 Here's the thing, when you're the best at what you do, you are

18 creative and alternatives are limited only by your

19 imaginations, abilities and tools, not by the court rules.  The

20 court rules mean nothing to him.  He told us he did 1,000 cases

21 and over 100 trials and he still doesn't know how to answer a

22 complaint?  He does a general denial?  You learn that in law

23 school you can't do that.

24          Your Honor, it's been more than frustration.  Judge

25 Arpert is a tremendously flexible Magistrate Judge.

1          THE COURT:  I know that.

2          MR. MANZO:  He bent over backwards so much, he's

3   probably getting chiropractic treatment right now, okay.  And

4   he was given 48 hours to correct his lateness on that pretrial

5   memo.  He sent the Judge amazingly, while we were standing in

6   the courtroom, 51 pages of that memo at 1:15 when we had a 1:30

7   appointment.  And he brought it to us and handed it to us in a

8   green folder which I still have in my file.  The Judge gave him

9   two days to clean it up.  He was supposed to give it back to

10  me.

11         I had something on Wednesday, I said, just give it to

12  me by Thursday morning, Mr. Novins, I'll clean up what I need

13  to put in, Mr. Duncan had a couple things and it would have

14  been to the Judge by 4:00 which was the new deadline on

15  Thursday.  He sent it at 3:15.  He took 30 -- out of the 48

16  hours, he took 47 and a quarter of that and gave me and Mr.

17  Duncan an altered pretrial memo.  We finally, in exasperation,

18  submitted ours again to the Judge.  The Judge held a hearing,

19  it's on the record, and you see what Mr. Novins said, no

20  excuse.  He played games with everything in this case, Your

21  Honor, and I don't appreciate it.

22         THE COURT:  All right.  Well, at this point,

23  obviously I wasn't fully -- fully -- I didn't fully appreciate

24  -- I mean, I got reports from Judge Arpert, but I didn't fully

25  -- you almost have to be there to fully appreciate the status

1  of this case.  But I do feel that if there's anything you

2  wanted to put in, that you had assumed was going to be in

3  because of the whatever, now's your time to do it is what I was

4  saying.  Is there anything of that nature?

5            MR. MANZO:  Nothing for us, Your Honor.

6            THE COURT:  What about you, Mr. Duncan?

7            MR. DUNCAN:  Nothing for us.  I -- like I said, this

8  was my first direct, Your Honor.  I wasn't as bad as I -- what

9  happened there was I relied on all the admissions, that's why

10 there were so many gaps in my direct and I had to clean it up

11 the next day.  It really screwed me up when I didn't get those

12 admissions in.  I had to go actually and get the posts and then

13 try to help the jury understand the context of those letters.

14 That's why the next day I brought in those three additional

15 postings to explain the context.  All of that was admitted in

16 the facts and -- but I believe I have everything in there and,

17 you know, I presented my case with all the facts that I have.

18            One other thing, Your Honor.  I just wanted to make

19 sure, in case Mr. Novins tries to use this to his advantage in

20 his closing, I withdrew the frivolous lawsuit counterclaim.  I

21 did it in the Summary Judgment Motion.  I also did it in the

22 joint.  I did it because when I filed the case, it was my

23 understanding you put it in the counterclaim and then

24 subsequently I found out that you're not allowed to put a

25 frivolous lawsuit in a counter --

```
 1              THE COURT:  He's not going to waste time on that.
 2              MR. DUNCAN:  Well, I just don't want him to be able
 3   to say, oh, well, he withdrew the frivolous lawsuit, so
 4   therefore it's no --
 5              THE COURT:  He's got enough to deal with --
 6              MR. NOVINS:  That's true.
 7              THE COURT:  -- without getting into some --
 8              MR. DUNCAN:  Okay.
 9              THE COURT:  -- something that isn't -- you know,
10   means -- is simply a waste of everybody's time.
11              MR. NOVINS:  I have no intention of getting into
12   that, but in a related aspect, Judge, as -- it's axiomatic
13   among attorneys that you don't promise a jury something in the
14   beginning and then not do it.  If you'll recall my opening, I
15   said I believe a lot of these counts are going to be gone by
16   the time we get to the middle of the trial.  Your Honor chose
17   to remove a lot of the counts, but you did it at the end,
18   that's fine.  But I think that I have a right to say to the
19   jury that all of those counts --
20              THE COURT:  No.  No -- well --
21              MR. NOVINS:  -- have been dismissed.
22              THE COURT:  No, not -- no, really.  That's -- all you
23   can do is pass by -- not as an argument --
24              MR. NOVINS:  Yes.
25              THE COURT:  -- but just that those claims are no
```

1 longer before us --

2          MR. NOVINS:  Right.  I just wanted to mention that I

3 did what I said, that's all.

4          THE COURT:  Well, don't --

5          MR. NOVINS:  It won't waste a lot of time.

6          THE COURT:  No, don't give yourself credit.  It's

7 just the Judge made the rulings based on --

8          MR. NOVINS:  Yes.

9          THE COURT:  -- what was provided on the platter.

10          MR. NOVINS:  It's what I suggested in my opening.

11          THE COURT:  All right, go ahead.  Let's make the

12 copies.

13          MR. MANZO:  Your Honor, I -- well, wait, before they

14 make copies, there's just one typo on one page.  You know I'd

15 find it, right, Charles?

16          MR. NOVINS:  A period, right?

17          MR. MANZO:  You knew I'd find it.  And I don't care

18 if we cross it out, but it was on page 7 of the jury charge,

19 nature of claims allege that Charles Novins, it should just be

20 Novins.

21          MR. NOVINS:  No objection, Judge.

22          MR. DUNCAN:  No objection.

23          THE COURT:  Very well.

24          MR. DUNCAN:  Okay.

25          MR. MANZO:  And you can just cross it out.  You don't

1  -- if you've already made the copies, I don't mind that.

2          Your Honor, two pieces of housekeeping I just wanted

3  to bring up to the Court.  I don't believe Mr. Novins actually

4  uttered the words that he rested his case.

5          THE COURT:  No, he's going to do that.

6          MR. MANZO:  I know he's done his post-trial motions,

7  so I'd like to get that taken care of.  And also, when I went

8  back to my office over the weekend and pulled up some of the

9  minute entries, there was a question from a juror that I don't

10  believe I ever saw.  And if I did see it, we never addressed it

11  I don't believe.  And it said, "Was Carl Osterwald or Richard

12  Lamb ever members of Nambla.  The question was asked on 11/16

13  by Juror 095354.  I would like that answered.  That's an

14  important distinction, if we could.

15          THE COURT:  That's fine.

16          MR. MANZO:  Okay.  If the Court could ask, then that

17  would be fine.

18          THE COURT:  I don't remember the question so it must

19  have slipped somewhere and I don't remember the question.  But

20  fine, I mean, we can answer it.  How do you want to -- how do

21  you want to answer it?

22          MR. MANZO:  You know what?  I would like, if it's

23  okay with Your Honor, you -- I don't have no -- I have no

24  further direct or recross or anything on the witness.  If you

25  want to just bring each one of them on and you can ask the

1  question, that would be it.  Whatever their answer is, yes or

2  no, that's just a yes/no question.

3          THE COURT:  So I would say, Ladies and Gentlemen, we

4  found that there was one more jury question that we forgot to

5  ask, so I'm going to ask Mr. Osterwald -- is he here?

6          MR. MANZO:  He will be, yes, Your Honor.

7          THE COURT:  He will be here in 15 minutes?

8          MR. MANZO:  As soon as Mr. Novins rests his case.

9          THE COURT:  Oh.  I'm going to ask Mr. Osterwald and

10 Dr. Lamb, one by one, I'll just ask them to come to the stand

11 and answer it.

12         MR. MANZO:  That's fine.  I have the question if it

13 will help Your Honor.

14         THE COURT:  Yes, give it -- give it -- Mr. Basilone

15 will take that.

16         MR. MANZO:  And what's on our mind is we asked the

17 one down below.  I think it just got in the papers and it must

18 have just got lost.

19         THE COURT:  Yeah.  I didn't even see it.  Yeah, I

20 just slipped by it.

21         MR. MANZO:  That's fine, no problem.  That would be

22 fine because if that's the question --

23         THE COURT:  Is there any -- do you have any problem

24 with that, Mr. Novins?

25         MR. NOVINS:  I have an application, too.  I think

1  that there's probably nothing wrong with Mr. Manzo's

2  application.  It's a little unusual and irregular, but okay.

3  As he --

4          MR. MANZO:  Why is it unusual and irregular?

5          THE COURT:  Wait a minute.  We -- did we ever ask

6  what date and -- what date did Carl Osterwald download and show

7  all posts to his wife?  Were all shown after lawsuit was filed?

8  Did he -- did we ask him that?

9          MR. MANZO:  I thought we did, Your Honor.  I cannot

10  be certain --

11          MR. NOVINS:  I, too, am not sure.

12          MR. MANZO:  -- but I thought we did.

13          MR. NOVINS:  Honestly, I don't recall giving a

14  specific date because we would have had to shuffle for that and

15  I don't remember doing it.

16          MR. MANZO:  I don't know if we have the dates.  I

17  don't know if they even remember the dates but --

18          MR. NOVINS:  Yeah.

19          MR. MANZO:  Certainly, I think that was asked because

20  I think --

21          THE COURT:  Well, why --

22          MR. MANZO:  You can ask him.

23          THE COURT:  Why don't I ask him.  He doesn't have to

24  have the exact date.  If he can just say April/May/June of '09

25  or --

1          MR. NOVINS:  Is it a question to Mr. or Mrs.

2    Osterwald?  I'm sorry.

3          THE COURT:  What date did Carl Osterwald download and

4    show all posts to his wife?  Were all shown after lawsuit was

5    filed?  Did he show her any other posts?

6          MR. NOVINS:  Right.  Sounds like it's probably to Mr.

7    Osterwald.

8          MR. MANZO:  And I have no objection to the question.

9    I didn't object to it initially when I saw it.  So if it hasn't

10   been asked or if you want to ask it again, no problem.

11         MR. NOVINS:  Right.

12         THE COURT:  Well, I'll ask both then, the two

13   questions --

14         MR. NOVINS:  Yeah.

15         MR. MANZO:  That's fair.

16         THE COURT:  -- of Mr. Osterwald and the one question

17   of Dr. Lamb.

18         MR. MANZO:  That's fine.

19         MR. NOVINS:  If it please the Court, I'd prefer their

20   attorneys ask, if it please the Court.

21         MR. MANZO:  I would --

22         THE COURT:  You'd like that?

23         MR. NOVINS:  Much better.

24         THE COURT:  Let me tell you something.

25         MR. NOVINS:  Yes, Your Honor.

1          THE COURT:  The Third Circuit in ruling on my custom

2  of letting jurors ask questions back in 1989 in a criminal case

3  said -- Chief Judge McKee now, wrote that the judge should ask

4  the questions.  Now I don't observe that all the time, I

5  shouldn't be saying this, because it just seems -- seems more

6  natural in a lot of instances for the lawyers to ask the

7  questions.  I think the Third Circuit thought that somehow it

8  would elevate the question -- I don't know what they thought,

9  but they said that the judge should ask the question.  So I

10 kind of observe that more or less.  But you remember during

11 this trial a couple times I said you can ask the question.

12          MR. NOVINS:  Yes.

13          THE COURT:  I don't care.

14          MR. NOVINS:  If it's neutral, then yes, I prefer the

15 Court not have its authority be associated with questioning any

16 -- either side.

17          MR. MANZO:  Your Honor, insomuch as I have rested my

18 case, I think that the Court should ask it.

19          THE COURT:  But it's a question for a juror, that's

20 the problem.

21          MR. NOVINS:  Yeah, I understand.

22          MR. MANZO:  I think the Court -- I think the Court

23 should ask it in this case because I have rested my case, I'm

24 not calling this witness.

25          THE COURT:  If he wants the Court to do it and Judge

1    McKee told me I should do it that way --

2              MR. MANZO:  I defer to the Appellate Division.

3              THE COURT:  Right.  All right.  Now --

4              MR. NOVINS:  The other -- oh.

5              THE COURT:  What else?

6              MR. NOVINS:  Since I haven't rested, I do --

7              (Discussion between the Court and the Marshal)

8                          (Pause)

9              MR. NOVINS:  I don't think that this was placed into

10   evidence before.  We -- it was an exhibit and both were read in

11   full to the jury.  I'm asking that they be put into evidence.

12             THE COURT:  What are they?

13             MR. NOVINS:  My esteem colleagues have said they're

14   going to object.  Number one, it's just my letter to Mr.

15   Osterwald saying, sir, please, I'd like to talk to you about

16   something and I would like to -- if you could call my office,

17   I'll keep it confidential, that whole thing.  And then the

18   second one is his online response saying keep your paper out of

19   my mailbox.

20             MR. MANZO:  Your Honor, I'll have multiple objections

21   to that.

22             THE COURT:  Why?

23             MR. MANZO:  Several.  Okay, we'll start with the fact

24   that it wasn't in the pretrial memo which Your Honor's dealt

25   with.  That's a minor objection.  A more major objection is

1   Rule 408, compromise and offers to compromise.  That's exactly

2   what that is.  It's a threat of a potential lawsuit or

3   litigation.  It's my client's response to that.  It's

4   absolutely not evidentiary under Rule 408 of the Federal Rules

5   of Evidence.  It should not come in for any reason.  It

6   shouldn't have even been read to the jury and I can direct the

7   Court to 408, number 2.  Number 2 would be the -- well, the

8   whole paragraph is operative.  And this is Mr. Osterwald's

9   response to his offer to compromise and discuss it.  It's not

10  evidentiary.  Obviously, he's -- the man's upset when you're

11  threatened with a lawsuit.  So that's why the Rule is in

12  existence.

13          And I also think that it's more prejudicial than

14  probative.  It really has nothing to do with his defamation

15  defense.  We don't have a claim for an improper lawsuit.  We

16  thought that Mr. Novins at least had a prima facie basis for

17  making his lawsuit claim against Carl.  So I don't know what

18  he's using it for other than to just make Carl look like a bad

19  guy and that makes it prejudicial.  So that's my three

20  objections, Your Honor.

21          THE COURT:  Evidence of the following is not

22  admissible on behalf of any party when?  When offered to prove

23  liability.  Well, it's not offered for that.  Or in validity of

24  or amount of a claim that was disputed as to the validity or

25  amount or to impeach a prior inconsistent statement.  It's not

1   being offered for any of those purposes.

2          MR. MANZO:  No.  But it says evidence of conduct or

3   statements made in compromised negotiations is likewise

4   inadmissible.  It says that right in the middle.  It's really

5   -- it's a settlement.  It's an offer to settle the case and I

6   have not brought in my confidential settlement negotiations

7   with Mr. Novins.  I certainly could do that.

8          THE COURT:  That's different.

9          MR. MANZO:  Yeah.

10          THE COURT:  The -- that's different.  This is the

11   historical explanation for how this dispute arose.  It's really

12   different from a real, bona fide effort to settle this lawsuit.

13   If you had letters saying I'll settle this lawsuit for X amount

14   of dollars, which you both may have, that would not be

15   admissible.  But this was how this was how this dispute began

16   and I think that it should be admissible because it's a

17   different character, it's a different kind of communication.

18   And not what is contemplated by Rule 409 -- 8.

19               (Exhibits received in evidence)

20          THE COURT:  What's next?

21          MR. NOVINS:  Thank you, Your Honor.

22          THE COURT:  What's the other exhibit.

23          MR. NOVINS:  They -- these are two separate exhibits.

24   As I said, the first one is my letter to Mr. Osterwald

25   initially inviting discussion.

1          THE COURT:  So we're done with that.  What's next.

2          MR. NOVINS:  The second was his public posting

3   reacting to that.  You're little piece of paper trash that

4   arrived in my mailbox, et cetera.

5          THE COURT:  Isn't that already in?

6          MR. NOVINS:  I wasn't sure if they were both in,

7   Judge.  I believe they nodded it was in.

8          THE COURT:  I thought that was in, but if it's not

9   in, it certainly can come in.

10          (Exhibits received in evidence)

11          MR. NOVINS:  Okay.

12          MR. MANZO:  And same objections, Your Honor, just for

13   the record.

14          THE COURT:  All right.

15          (Pause)

16          THE COURT:  All right.  We're going to bring the jury

17   -- we're going to bring the jury in.

18          MR. MANZO:  Can we have Mr. Novins rest his case,

19   please, Your Honor?

20          THE COURT:  And Mr. Novins will rest his case.

21          MR. MANZO:  At least on his post-trial motions.

22          THE COURT:  And then post-trial -- we're not going to

23   talk about motions.  I will -- I assure you I give you all

24   credit for having made Rule 50 Motions for Judgment, all three

25   of you, on time and repeatedly.

28

1          MR. MANZO:  You're going to miss us, Your Honor,

2  you're going to miss us.

3          THE COURT:  And then we're going to say, oh, Ladies

4  and Gentlemen, we note that there was a letter from a juror

5  that I overlooked, somehow got caught in the papers.  And I'm

6  -- it was a question to Mr. Osterwald and one to Dr. Lamb and

7  so if counsel do not mind, I'd like to ask if each of them

8  would come forward to answer this question.  And you can say,

9  you know, that you don't mind.  I assume that's what you're

10  going to say.

11          MR. MANZO:  Absolutely.

12          THE COURT:  All right, that's it.

13          MR. DUNCAN:  Your Honor?

14          THE COURT:  Yes?

15          MR. DUNCAN:  Just real quick.  Do you allow exhibits

16  to be shown during the summation?

17          THE COURT:  Summation?  Absolutely, if they're in.

18          MR. DUNCAN:  Yes, they are.

19          THE COURT:  If they're in, absolutely.  You can point

20  to the charge, you can point to the verdict sheet, all of that.

21  That's why I try to do this before summations because my whole

22  goal is to make sure the jury grasps what we're doing here,

23  although God help us, the Supreme Court hasn't told us yet.

24                         (Pause)

25                 (In the presence of the jury)

1          THE COURT:  Welcome, Ladies and Gentlemen, after your

2   long weekend.  Good morning, please be seated.

3          All right.  Now Friday, Mr. Novins, you had completed

4   your testimony.  I -- I'll ask you do you have any additional

5   witnesses you intend to call?

6          MR. NOVINS:  No, Your Honor.

7          THE COURT:  Are you resting?

8          MR. NOVINS:  That is correct.

9          THE COURT:  All right.  Mr. Manzo and Mr. Duncan have

10  also rested, so there will be nothing further, Ladies and

11  Gentlemen, other than the Judge's charge to the jury and the

12  summations.

13         Now we found something over the weekend, Ladies and

14  Gentlemen.  This is a question, two questions to -- written by

15  a juror that evidently were written during the testimony and

16  for some reason it got mixed up with the papers and I never

17  asked the questions.

18         Now the first question is directed to, let's see, Dr.

19  Lamb and to Mr. Osterwald.  And then the second question is

20  asked just to Mr. Osterwald.  So I'm going to ask counsel, if

21  you don't mind, if we could have your clients come back to the

22  stand, they're still under oath, just to respond to these

23  questions?

24         MR. MANZO:  No objection on behalf of the Osterwalds,

25  Your Honor.

Lamb/Osterwald - Jury questions                    30

1        MR. DUNCAN:  No objection, Your Honor, on behalf of

2  Dr. Lamb.

3        THE COURT:  Very well.  Then I'll ask first Dr. Lamb

4  because only one of them is for him.  Would you come forward,

5  please?  Yes.  You are still under oath from the oath

6  administered last week.

7             VINCENT LAMB, DEFENDANT, PREVIOUSLY SWORN

8                          JURY QUESTIONS

9  BY THE COURT:

10 Q    The question from the jury was were you, Dr. Lamb, ever a

11 member of Nambla or Nambia?  N-a-m-b-, I don't know if it's l-a

12 or i-a.

13 A    It would be l-a and the --

14 Q    L-a, okay.

15 A    And the answer to that is no.

16        THE COURT:  Thank you.  Very well, you may step down.

17              (Witness is excused)

18        THE COURT:  Mr. Osterwald, would you come forward.

19        CARL OSTERWALD, DEFENDANT, PREVIOUSLY SWORN

20                          JURY QUESTIONS

21 BY THE COURT:

22 Q    A question was asked -- you are still under oath from last

23 week.

24 A    Yes, Your Honor.

25 Q    The question was asked were you ever a member of Nambla?

1  A    No, never.

2  Q    Very well.  There's another question, there are two

3  questions directed to you.  What date did you download and show

4  all the posts to your wife?  Were they shown after the lawsuit

5  was filed?  Did you show her any other posts?  And there are

6  really three questions.  You want to take them one by one?  Do

7  you remember when you showed the posts to your wife?

8  A    I began showing her some -- it was in a few weeks after

9  the lawsuit was filed.  You know, it was a very difficult time.

10 I was embarrassed to even have to show her these.  I felt

11 horrible about even doing it.

12 Q    All right.  We just wanted to know when it was.  After the

13 lawsuit was filed.

14 A    That would have been April or May of 2009.

15 Q    Very well.  Well, the question did he show her any other

16 posts, you know, just posts, that would have been all that

17 there was; is that correct?  Everything was posts?

18 A    That's correct.

19         THE COURT:  All right.  Thank you very much and you

20 may step down.

21                   (Witness is excused)

22         THE COURT:  All right.  This is for all the letters

23 from jurors are filed as part of the record.  All right, thank

24 you very much.

25         So both sides have rested, Ladies and Gentlemen, and

1   have presented their cases and now it is my job to give the

2   Judge's instructions to the jury.  I will do that at this time.

3   I have copies of my charge on your seats as well as a verdict

4   sheet.  Remember, I said the verdict sheet I would give you

5   because it's just helpful.  I mean, I don't know if it's

6   necessary for a judge to do that, but it's helpful because it

7   kind of gives the jury a guide to be able to know what it must

8   answer.  What are the verdicts that you need to give us, what

9   are we asking you to tell us.  So it is a good, kind of, road

10  map for your discussions when you go back to deliberate.  And

11  actually, by answering these questions, you will be -- you will

12  be giving us a verdict.

13                            JURY CHARGE

14          THE COURT:  Now, let's look at the jury charge.  It's

15  not that many pages.  I should be able to get through it in a

16  relatively short period of time, 15 pages.  So let's start.

17          Now you've heard all the evidence in the case.  The

18  time has come for you to -- for me to instruct you as to the

19  law governing the case.

20          At the very outset, Ladies and Gentlemen, I wish to

21  express my sincere appreciate for the services you have

22  rendered as jurors.  Each of you has made a considerable

23  sacrifice.  In some instances, you have traveled extensive

24  distances to get here each trial day.  You have been most

25  attentive, cooperative and patient.  For all of this, we are

1  extremely grateful.

2          Under our legal system, the court and the jury have

3  distinct and separate functions to perform.  Although you as

4  jurors are the sole judges of the facts, you are duty bound to

5  follow the law as stated in the instructions of the judge and

6  to apply the law so given to the facts as you find them from

7  the evidence before you.

8          You are not to single out one instruction alone as

9  stating the law, but must consider the instructions as a whole.

10  You should construe each of the instructions in light of and in

11  harmony with the other instructions and you should apply the

12  instructions as a whole to the evidence.  The order in which

13  the instructions are given has no significance and is no

14  indication of their relative importance.

15          You are not to be concerned with the wisdom of any

16  rule or law regardless of any opinion you may have as to what

17  the law ought to be.  It would be a violation of your sworn

18  duty to base a verdict upon any other view of the law than that

19  given in the instructions of the Court, just as it would be a

20  violation of your sworn duty as the judges of the facts to base

21  a verdict upon anything but the evidence in the case.

22          You are not -- you are to perform your duty as jurors

23  without sympathy, bias or prejudice either for or against Mr.

24  Charles Novins and the Law Offices of Charles Novins PC, both

25  were in the caption as the plaintiffs, or the Osterwalds and

1  Dr. Lamb.  The parties and the public expect that you will

2  carefully and impartially consider all the evidence in the

3  case, follow the law as stated by the Judge and reach a just

4  verdict regardless of the consequences.

5        This case will be submitted to you for your verdict

6  in the form of answers to certain written questions on a

7  verdict form.  That's what I referred to.  By answering these

8  questions, you will be rendering your verdict for or against

9  Novins, Mr. Osterwald, Mrs. Osterwald or Dr. Lamb.

10        All right, let's begin.  First of all, this is a

11  civil case.  As I told you earlier in the trial, the claims

12  originally brought by Mr. Novins are not before you.  They have

13  been either dismissed or withdrawn or resolved for various

14  reasons over the last couple of years.

15        You must decide the claims raised by the counter-

16  claimants.  Dr. Lamb is a counterclaimant, Mr. Osterwald is a

17  counterclaimant.  He was sued, he's suing back.  Mrs. Osterwald

18  was not a defendant, but she has joined the case as what we

19  call a third-party plaintiff.  As such, the burden of proof is

20  on Mr. Osterwald, Mrs. Osterwald and Dr. Lamb individually and

21  separately to prove their allegations against Novins by a

22  preponderance of the evidence.  I'm considering Mr. Novins and

23  his law firm as just one, so I'm just referring to Law Offices

24  as well as Mr. Novins personally as one entity.  He's a one-man

25  law firm.  He's the lawyer of that firm, period.

1            If any of them should fail to establish any of the

2    essential elements of their claims, then you must find for

3    Novins on that claim.  By the term preponderance of the

4    evidence, I mean the greater weight and degree of credible

5    evidence.  A party who has the burden of proof must persuade

6    you that his or her claim is more probably true than not true.

7    In other words, a preponderance of the evidence, and that's the

8    term we use in civil cases, means such evidence as when

9    considered and compared with the evidence opposed to it has

10   more convincing force and produce in your mind the belief that

11   what is sought to be proved is more likely true than not true.

12           In determining whether the Osterwalds and/or Dr. Lamb

13   has met this burden, you will consider all the evidence

14   regardless of who may have produced it.  It might be helpful to

15   visualize a pair of balance scales, imagine that you can put on

16   one side of the scale the evidence that you find credible,

17   relevant and supportive of a person, of a counterclaimant or

18   third-party plaintiff on a particular claim and place that on

19   one side of the scale.  And then place on the other side of the

20   scale the credible, relative evidence in support of the

21   opponent, that would be Novins.

22           And if at the end of the case, here I am, Lady

23   Justice with this -- with the scales.  If at the end of the

24   case, the scales are equally balanced, 50/50, then the Novins

25   -- pardon me, let me start over again.  If at the end of the

1    case, the scales are equally balanced 50/50, Novins on one

2    side, anyone of -- you have to consider each, each person

3    separately who's a counterplaintiff or counterclaimant.  So you

4    would say Mrs. Osterwald and Novins, if equally balanced, then

5    Novins wins because why?  Because the plaintiff or the party

6    suing has the burden of proof.  So then you would say Mr.

7    Osterwald and Novins, if it's equally balanced, Novins wins.

8    Lamb, Novins, if it's equally balanced, Novins wins.  If it

9    tips in favor of Osterwald, Osterwald wins.  If it tips in

10   favor of Mrs. Osterwald, Mrs. Osterwald wins.  If it tips in

11   favor of Dr. Lamb, Mr. Lamb wins.  And obviously, if the scales

12   tip in favor of Novins, you would find for Novins.  Now, you

13   know, that's just a effort at some kind of imagery and it may

14   be helpful or it may not be, don't worry about it.

15          The weight of the evidence on any issue is not

16   determined by the number of witnesses, but how reasonable,

17   persuasive and satisfying the evidence is to you.  Be assured

18   that nothing -- no, wait a minute, page 4.

19          In determining the facts in this case, you must

20   consider only the evidence which has been admitted during the

21   trial.  The term "evidence" refers to the sworn testimony of

22   the witnesses regardless of who may have called them, and all

23   exhibits received in evidence regardless of who may have

24   produced them, and all stipulations of counsel.  Stipulations

25   are we agree that thus and such is the case.

1            Any evidence as to which an objection was sustained

2    by the Court and any evidence ordered stricken by the Court

3    must be entirely disregarded.  Comments or questions made by

4    the lawyers during opening statements, trial or closing

5    arguments must not be viewed as evidence.  If a lawyer's

6    statement of facts in the case differs from the jury's

7    recollection of the facts, you should rely on the jury's

8    recollection and not that of a lawyer.  Remember, I said

9    they're your tour guides going along with you, but they're not

10   witnesses.  They don't produce evidence.

11           It's important to remember that where an objection

12   was sustained as to certain questions, there must be no

13   speculation as to what the answer might have been or as to

14   reason for the objection.  Any evidence that was offered and

15   rejected or stricken from the record by the Court must not be

16   considered for any purpose.  Such matters are to be treated by

17   you as though you had not heard them.

18           Now the lawyers have made objections during this

19   trial and sometimes I guess I've seen -- I've seemed to be kind

20   of fussy and rigid and tough on them.  Well, my apology is,

21   number one, they're lawyers and they -- they're use to being,

22   kind of, around fussy judges.  But maybe they aren't, I don't

23   know.  But judges can be hard on the lawyers, but you shouldn't

24   take that as meaning anything in terms of your consideration of

25   the evidence.

1    Do you understand what I'm saying?  I mean, I'm just

2  the traffic cop up here.  I'm the one who has to keep things

3  moving, I'm the one who has to make rulings, they may disagree

4  with me.  And they're working hard on behalf of their clients.

5  They have -- I mean, that's what you would expect, that a

6  lawyer cares about his case, cares about his clients, cares

7  about his cause.  I mean, that's what you would expect.  And

8  you can have nothing but admiration for a person whose

9  conscientious about his job.

10    So that's -- you don't say, well, because that lawyer

11  was really speaking up for his client to the Judge, that

12  somehow that's going to affect your consideration of the case.

13  No, no, no, no, no, no, no.  You're in a courtroom, Ladies and

14  Gentlemen.  This is -- a courtroom functions in this way.  You

15  make your decision based on the evidence, not whether or not

16  the Judge was fussy, whether or not there were objections.

17    Suffice it to say, and I always say this to jurors,

18  these are the Rules of Evidence.  Just look at this in here and

19  just think how complicated, how many exceptions to the Rules

20  exist in here.  Then you can have some appreciation of why

21  there would be objections because the law of evidence is so

22  complicated and does have so many different subsections and

23  exceptions that there's reason that there would be argument

24  with regard to the application of it.  So don't worry about

25  that.  You are going to focus on the evidence that was admitted

Jury Charge                                                        39

1    and you'll make your verdict based on what was presented.

2              In consideration of the evidence, you're not limited

3    to the statements of the witnesses.  You are permitted to draw

4    from the facts what you've -- that you find to have been

5    proved, such reasonable inferences as seem justified in the

6    light of your own experience.  You have a right to consider all

7    the evidence in the light of your own general knowledge and

8    experience in the affairs of life and to take into account

9    whether any particular evidence seems reasonable and probable.

10   You are expected to use your good sense, consider the evidence

11   in the case for the purposes for which it was admitted and give

12   it a reasonable and fair construction in the light of your

13   common knowledge.

14             Be assured that nothing said in these instructions is

15   to suggest or convey in any way or matter what verdict I think

16   you should find.  What the verdict shall be is the sole and

17   exclusive duty and responsibility of the jury.

18             Now you see where I'm getting to what I had said a

19   few minutes ago.  It's the duty of each side of the case to

20   object when the other side offers testimony or other evidence

21   which that side believes is not properly admissible under our

22   rules or procedures.  And the rules and procedures are

23   complicated.

24             Questions relating to the admissibility of evidence

25   are solely questions of law for the Judge and you must not

1  concern yourselves with the reasons for these rulings.  In your

2  consideration of the case, you must draw no conclusions from

3  these rulings and you must consider only the evidence that is

4  admitted.  Nor should you consider the fact that a lawyer made

5  an objection during the course of the trial as reflecting

6  adversely upon the strength of that side of the case.

7          Upon allowing testimony or other evidence to be

8  introduced over the objection of a party, the Judge is not

9  indicating any opinion as to the weight or effect of such

10 evidence.  All the jury -- all the Judge is indicating is that

11 she believes that under a particular Rule of Evidence, it's

12 admissible.  I have not intended to suggest any opinion as to

13 how I would decide any of the issues in this case that are

14 before you.

15         Now there are some witnesses who have testified in

16 this case.  You have the job of determining what is credible

17 and what is not credible.  This does not mean that you must

18 accept all of the evidence as true or accurate.  You are the

19 sole judges of the credibility or believability of each witness

20 and the weight to be given to his or her testimony.  You are

21 called upon to resolve various issues of fact concerning the

22 respective allegations of the parties.

23         How do you determine where the truth lies?  Your

24 determination of the credibility or believability of a witness

25 largely depends upon the impression the witness made upon you

1  as to whether or not he or she was giving an accurate and

2  truthful version of what occurred.

3        In weighing the testimony of a witness, you should

4  consider his or her interest, if any, in the outcome of the

5  case; his or her manner of testifying; and the extent to which

6  he or she has been supported or contradicted by other evidence.

7  You may accept or reject the testimony of any witness in whole

8  or in part.  You must use your common sense, your good judgment

9  and your experience.

10       The degree of belief to be given a witness should be

11 determined by his or her appearance or conduct on the stand, by

12 his or her demeanor, his or her relationship to the lawsuit and

13 to the parties, his or her bias or impartiality, the

14 reasonableness of his or her statements, the strength or

15 weakness of his or her recollection viewed in the light of all

16 the other testimony and the attendant circumstances in the

17 case.

18       The test is not which side brings the greater number

19 of witnesses or presents the greater quantity of evidence, but

20 which witnesses and which evidence appeal to your minds as

21 being most accurate and otherwise trustworthy.  The testimony

22 of a single witness which produces in your minds a belief and

23 the likelihood of truth is sufficient for the proof of any fact

24 and would justify a verdict in accordance with such testimony

25 even though a number of witnesses may have testified to the

1   contrary if after consideration of all the evidence in the

2   case, you hold greater belief in the accuracy and reliability

3   of the one witness.

4          You should carefully scrutinize all the testimony

5   given, the circumstances under which each witness has testified

6   and every manner and evidence which tends to show whether a

7   witness is worthy of believe.  Consider each witnesses

8   intelligence, motive, state of mind, demeanor while on the

9   stand.  Consider the witness's ability to observe the matter

10  and whether he or she appeared to have an accurate recollection

11  of these matters.

12         The ultimate question for you to decide in passing

13  upon the credibility is did the witness tell the truth.  It is

14  for you to say whether or not his or her testimony at this

15  trial is truthful in whole or in part in light of the demeanor

16  and explanations and all the evidence in the case.

17         If a witness is shown knowingly to have testified

18  falsely concerning any material matter, you have a right to

19  distrust such witness's testimony in other particulars and you

20  may reject all the testimony of that witness or you may give it

21  just -- just as much credibility as you think it deserves.  In

22  other words, you could reject part of what a witness says and

23  accept another part.

24         All right, let's talk about this case.  This case

25  centers around statements made in connection with a Usenet

1  forum.  The counterclaimants, Carl Osterwald and Dr. Richard

2  Lamb and third-party plaintiff Yvonne Osterwald allege that

3  Novins made certain defamatory statements against them that

4  were posted on the Usenet forum and over the internet.

5  counterclaimant Lamb also alleges that Novins made additional

6  defamatory statements against him by letter or fax and that

7  Novins interfered with his prospective economic advantage.  Now

8  that's a summary of the lawsuit.

9          Now let me just mention to you that this is, after

10 all, a joint trial for the Osterwalds and the Lamb -- Dr. Lamb

11 together.  It's not like you have just one party on one side

12 and one party on the other side.  You've got multiple parties

13 on one side.

14         However, you must consider Yvonne Osterwald, Carl

15 Osterwald and Dr. Lamb separately, consider the claims that

16 they are making separately.  Finding that one of them has

17 carried his or her burden on one or more claims does not

18 automatically mean another claimant has met his or her burden

19 of proof.  Conversely, finding one party has not carried his or

20 her burden of proof does not automatically mean another party

21 has failed to carry his or her burden of proof.  You understand

22 that.  And that's why we have the verdict sheet set up

23 separately with each party so that you can go down the steps

24 individually.

25         All right.  What's the claim that we've been spending

1   a great deal of time on, and I'm going to talk about it now.  A

2   claim for defamation.  Defamation is defined in the law or is

3   viewed in the law as a harm to ones reputation.  That's the

4   area of the law in which we're dealing.  Defamation has to do

5   with your reputation.

6        In order for a complaining party to win his or her

7   claims against another for defamation, the party must prove by

8   a preponderance of the credible evidence that the defamer

9   communicated to someone other than the complaining party a

10  false and defamatory statement of fact concerning the

11  complaining party and that the defamer had actual knowledge

12  that the statement was false or acted in reckless disregard of

13  its truth or falsity or acted negligently in failing to

14  ascertain the falsity of the statement.

15       Now you see that?  That's a long definition, but that

16  puts it all in place and you can go back and reread that

17  because that's your definition.  And you can underline because

18  you can take this jury charge with you into the jury room if

19  you want to.

20       For the Osterwalds and Dr. Lamb to win on the claim

21  of defamation, each of them must prove by a preponderance of

22  the evidence, one, that Novins made a defamatory statement of

23  fact; that the statement -- two, that the statement of fact

24  concerned them, concerned this counterclaimant, Lamb or

25  Osterwald or the third-party plaintiff, Mrs. Osterwald; three,

1  that the statement was false; four, that the statement was

2  communicated to at least one other person other than the

3  counterclaimant or third-party plaintiff; five, that Novins had

4  actual knowledge that the statement was false or acted

5  recklessly in disregard of the statement's truth or falsity or

6  that he acted negligently in failing to determine the falsity

7  of the statement.

8          All right.  Those are what we call the elements, you

9  can go down your fingers.  These are the elements of defamation

10 that you're going to have to decide.  So my second paragraph is

11 really a repetition of the first paragraph, but it just breaks

12 it down into the elements where you can go down your fingers.

13         All right.  Now let's just talk about defamation.

14 What's defamation?  A defamatory statement is a statement of

15 fact which tends to harm the reputation of another or which

16 would tend to expose that person to hatred, contempt or

17 ridicule or to a loss of good will and confidence felt toward

18 him or her by others or which has a tendency to injure his or

19 her trade or business.

20         Although perhaps directly injurious to a person, name

21 calling does not have a defamatory content such that harm to

22 reputation can be shown.  Therefore, name calling is not a

23 basis for proving defamation.

24         The alleged defamatory statement must be a statement

25 of fact.  Statements of opinion are not -- you can't win a

1  lawsuit on statements of opinion, they're not actionable.

2  Statements of opinion are not actionable defamation.

3  Similarly, name calling, epithets and abusive language, no

4  matter how vulgar or offensive, are not actionable defamation.

5  No matter how obnoxious, insulting or tasteless such name

6  calling may be, it is regarded as a part of life for which the

7  law of defamation provides no remedy.

8         Statements claimed to be defamatory should be given

9  their ordinary meaning which is the same meaning that people of

10 common and reasonable understanding would give to them in the

11 context and under all the circumstances that were present at

12 the time they were made.

13        In determining whether a statement is defamatory, you

14 are not bound by the interpretation of the statement offered by

15 either party or by any person hearing the statement.  If the

16 meaning of the statement is unclear, it is your job as the jury

17 to determine the meaning of the statement.  In this regard, you

18 are, of course, free to consider the common and ordinary

19 meanings of the word used in the context of the statement.

20        But bear in mind that your deliberations are not to

21 be governed solely by what you believe, you yourselves believe

22 to be the meaning of the language used, nor indeed by what you

23 personally believe the complained about party intended to be

24 understood.  The test is what you find from all the evidence

25 the words were understood to mean by who?  By a reasonable

1  person reviewing the comments in the context in which the

2  statement appeared.

3          Each counterclaimant or third-party plaintiff must

4  also prove by a preponderance of the evidence that the

5  defamatory statement was read and understood by at least one

6  other person to concern that counterclaimant or plaintiff.  The

7  actual naming of the counterclaimant or third-party plaintiff

8  by name in the statement is not necessary so long as those who

9  read the statement understood that the counterclaimant or

10 third-party plaintiff was the subject of the statement.

11         Now, Ladies and Gentlemen, you are not called upon to

12 decide whether Novins intended the statement to refer to a

13 counterclaimant or a third-party plaintiff.  The issue before

14 you is whether those persons reading the statement, whoever

15 they might be, reasonably understood the statement to refer to

16 the counterclaimant or third-party plaintiff.

17         In evaluating the statements at issue, you can --

18 should consider the nature and interests of the persons to whom

19 the statements were communicated and the extent of damage that

20 would be produced if the communication proved to be false.

21         Counterclaimants or third-party plaintiff need not

22 prove monetary or adverse employment decisions as a result of

23 Novins' actions.  However, a counterclaimant or third-party

24 plaintiff must prove that there reputation was actually

25 affected by the defamation or that he or she suffered personal

1   humiliation.  Proof of injury to represent -- reputation defies

2   exact measurement -- defies exact measurement, but a

3   complaining party must offer some concrete proof that his or

4   her reputation has been injured.  It is not sufficient that the

5   complaining party's own feelings were hurt or that he or she

6   suffered embarrassment.  Rather the focus is on the affect of

7   the alleged defamatory statement on third person.  That is

8   whether they viewed that party in a lessor light as a result of

9   hearing or reading the offending statement.  Therefore, there

10  can be no defamation if the recipients of the alleged

11  defamatory statements did not believe them.  Do you understand

12  what I'm saying?

13       All right.  Now there was a claim by the counter-

14  claimants and Mrs. Osterwald for a cause of action that is

15  similar to defamation, but it is, in New Jersey law, a separate

16  cause of action, it's called false light.  And whereas

17  defamation is an attack upon a person's reputation, the law

18  considers false light an invasion of privacy.  That's -- it's

19  kind of distinguished that way in the law of New Jersey.

20       So let's talk about this cause of action for false

21  light because all three are bringing that claim.  Let's discuss

22  it.  The Osterwalds and Dr. Lamb have also asserted claims for

23  false light.  A false light claim involves identifying and

24  presenting a person in such a way that leaves a negative and

25  inaccurate impression about that person.  In order for each

1 counterclaimant or third-party counterclaimant to prevail on

2 this claim against Novins, the counterclaimant or third-party

3 plaintiff -- well, I see we got a typo here.  It should read in

4 order for each counterclaimant or third-party plaintiff, you

5 see where I am on -- I'm on one, two, three, four -- line four

6 of this paragraph that talks about false light.

7          In order for each counterclaimant or third-party

8 plaintiff to prevail or to win, to prevail means to win, on

9 this claim against Novins, the counterclaimant or third-party

10 plaintiff must prove by a preponderance of the credible

11 evidence that, one, that the portrayal of himself or herself is

12 highly offensive to a reasonable person; and two, Novins had

13 knowledge of or acted in reckless disregard as to the falsity

14 of the publicized matter and the false light in which the

15 complaining party would be placed.

16          Now the complaining party need not prove that he or

17 she was defamed in order to establish that he was placed -- he

18 or she was placed in a false light.  What that's saying is that

19 this is a separate cause of action, separate from defamation

20 which we talked about earlier in this charge.

21          The interest protected by the duty not to place

22 another in a false light is that of the individuals piece of

23 mind, it's the invasion of privacy, his or her interest in not

24 being made to appear before the public in an objectionable

25 false light or false position, or in other words, otherwise

1   that he or she is.  The claim for defamation, on the other

2   hand, is to protect a person's interest and a good reputation.

3        Now let's talk more about false light.  In

4   determining whether Novins placed the individual counter-

5   claimants or third-party plaintiff in a false light, you should

6   consider the nature and interest of the persons to whom the

7   statement was communicated, the context of the communications

8   and whether the statements would have a tendency to leave a

9   negative and inaccurate impression upon that person.

10        Statements of opinion are not actionable in a claim

11   for false light.  Remember, I said that about defamation, too.

12   It's not actionable in a false light claim.  Similarly, name

13   calling, epithets, abusive language no matter how vulgar or

14   offensive cannot constitute false light.  No matter how

15   obnoxious, insulting or tasteless such name calling is, it is

16   regarded as part of life for which the law of false light

17   provides no remedy.

18        The publicized material in a false light claim must

19   constitute a major misrepresentation of the complaining party's

20   character, history, activities or beliefs.  The publicity at

21   issue must be of a character highly offensive to a reasonable

22   person.  This protection of privacy does not extend to the

23   hypersensitive person.  The material publicized must be

24   something that would be objectionable to the ordinary person

25   under the circumstances.

1          All right.  Now I'm moving on to another claim which

2   was made in this lawsuit.  It was made by Dr. Lamb who teaches

3   at the College.  Counterclaimant Lamb additionally contends

4   that Novins' conduct interfered with his future economic

5   advantage which is to say that Novins intentionally disrupted

6   the business relationship between Dr. Lamb and his employer and

7   prospective employers.

8          The law of New Jersey protects against unjustified

9   and wrongful interference by another person of a person's right

10  to pursue a lawful business and to enjoy the fruits and

11  advantages of ones industry or efforts.

12         To win on this claim, Dr. Lamb must show by a

13  preponderance of the evidence certain elements.  Here we go to

14  our fingers again.  You have to count, you go one by one so you

15  can check to see whether the elements have been shown by a

16  preponderance of the evidence.

17         One, that Dr. Lamb had some reasonable expectation of

18  economic advantage or benefit; two, that Novins had knowledge

19  of such expectancy of economic advantage or benefit; three,

20  that Novins wrongfully and without justification interfered

21  with Dr. Lamb's expectancy of economic advantage or benefit;

22  four, that in the absence of Novins' conduct, it is reasonably

23  probable that Dr. Lamb would have realized his economic

24  advantage or benefit; and five, that Dr. Lamb sustained damage

25  as a result of Novins' conduct.  Now those are the elements

1  that must be shown by Dr. Lamb in order to win on this claim.

2           For the alleged harm caused by the Novins'

3  statements, the Osterwalds and Dr. Lamb seek to recover money

4  damages, what we refer to as compensatory damages.

5  Compensatory damages are sought by a party for the recovery of

6  the money value of his or losses caused by the offending party.

7  For the alleged interference with prospective economic

8  advantage, Dr. Lamb also seeks compensatory damages.

9           Now if a party has established the essential elements

10 of his or her claim as explained in these instructions, he or

11 she is entitled to compensatory damages for all the detrimental

12 effects of a defamatory statement relating to the party's

13 reputation or false light harm which was reasonably to be

14 foreseen and which are a direct and natural result of the

15 offending statements.  The same applies to proof of

16 interference with prospective economic advantage.  Damages

17 awarded for such purposes must be proportional to the harm

18 caused.  You see, damages, the money damages have to be caused

19 by the offending party's conduct.  It's not something that you

20 just pull out of the sky.  It has to be proportional to what

21 the offending party did, the harm the offending party caused.

22          The law recognizes the damage to reputation caused by

23 defamation may not always lend itself to proof by objective

24 evidence.  For this reason, you are permitted to award general

25 damages to compensate a party for injury to reputation that you

1    reasonably believe he or she suffered.  In determining the

2    amount of damages, consider the manner in which the statements

3    were disseminated, the extent of its circulation, the injury to

4    the character and reputation of the individual, the bodily harm

5    to the individual counterclaimant or third-party plaintiff and

6    the mental anguish, suffering and emotional distress

7    experienced by that person.

8             You may also take into consideration the nature of

9    the counterclaimant or third-party plaintiff's occupation and

10   the extent to which he or she may reasonably be expected to

11   find that the defamation or false light has interfered with his

12   or her successful pursuit of that occupation.

13            The foundation of an action for defamation is the

14   injury to a reputation, well, I said that earlier.  Hence, any

15   award you choose to make as part of the compensation to the

16   Osterwalds or Dr. Lamb may only be to address consequences that

17   followed from injury to their individual reputations.

18            To the extent that either of the Osterwalds or Dr.

19   Lamb have claimed emotional distress as a result of Novins'

20   actions, I instruct you that he or she may be compensated by

21   you for such ill effects only if you find that he or she

22   experienced them because of the actual damage done to his or

23   her reputation.  If you find that his or her emotional

24   suffering was caused only by his or her having read the

25   statement and not by the publication's impact upon his or her

1   reputation, you may not consider such suffering in arriving at

2   the amount of damages you choose to award to him or her.

3        Now I have just described the various concepts with

4   which you're going to have to deal in deciding the present

5   case.  Your verdict must represent the considered judgment of

6   each juror.  In order to return a verdict, it's necessary that

7   each juror agree thereto.  Your verdict must be unanimous.  It

8   is your duty as jurors to consult with one another and to

9   deliberate with a view to reaching an agreement if you can do

10  so without violence to individual judgment.

11       Each of you must decide the case for yourself, but do

12  so only after an impartial consideration of the evidence with

13  your fellow jurors.  In the course of your deliberations, do

14  not hesitate to re-examine your own views and to change your

15  opinion if convinced it is erroneous.  But do not surrender

16  your honest conviction as to the weight or effect of evidence

17  solely because of the opinion of your fellow jurors or for the

18  mere purpose of returning a verdict.  You are not partisans,

19  you are judges, judges of the facts.  Your sole interest is to

20  ascertain the truth from the evidence in the case.

21       Now I'm going to stop and read these last, last page

22  and a half after the summations.  So I'm going to give you a

23  three-minute break right now and then we'll come back and begin

24  summations.  Thank you and you may step down.  Please leave

25  your materials, if you will, at your seat.

1        (Outside the presence of the jury)

2            (Off record from 11:56 a.m. to 12:07 p.m.)

3            MR. MANZO:  Do you want to do the exhibits now, Your

4   Honor?

5            THE COURT:  Yes.

6            MR. MANZO:  Okay.  Your Honor, at -- we're on the

7   record?

8            THE COURT:  Yes.

9            MR. MANZO:  Excuse me.  Thank you.  Your Honor, at

10  your suggestion, Mr. Novins and I went through the exhibits

11  from the Osterwalds, highlighted the applicable statements made

12  by Mr. Novins and that was done by us and reviewed by him.

13  Also, he was given the opportunity to redact any offensive

14  statements that weren't his own.  I just want to let you know

15  that that was completed to my satisfaction and I wanted Mr.

16  Novins to put on the record that he is either satisfied or

17  dissatisfied.

18            THE COURT:  Mr. Novins?

19            MR. NOVINS:  Your Honor, the highlighting was done in

20  accordance with accurate -- it was done accurately to show my

21  statements.

22            THE COURT:  So when I have any complaints a month

23  from now, you know that your -- I had -- I thought I was going

24  to look at them.  I've been doing so many things, I did not

25  look at them.  So I'm relying on what you're saying, that you

1   looked over these exhibits --

2         MR. NOVINS:  Yes.

3         THE COURT:  -- and that highlighted in yellow, is it?

4   That the yellow highlighted statements are the ones that you

5   individually, Charles Novins, made?

6         MR. NOVINS:  Yes.  My esteemed colleague and I

7   collaborated to make sure that they were right.  We both

8   reviewed it, they're right.

9         THE COURT:  Fine.

10        MR. MANZO:  And also, Your Honor, he did have the

11   opportunity to redact any offensive statements that were

12   unrelated to this case.  Now I know we have a difference of

13   opinion on what hearsay is.  Your Honor has already ruled on

14   what's hearsay or not.  But we never tried to introduce a

15   superfluous conversation that had, you know, had some bad

16   comment in it.  He had the opportunity to redact it, he didn't

17   have any such redactions, I didn't see any type of offensive

18   language, but he did not choose to redact anything that, you

19   know, that was superfluous.  But just wanted to let you know

20   that.

21        THE COURT:  Very well.  Now what else?  Was there

22   something else?

23        MR. DUNCAN:  We -- Your Honor, we likewise went over

24   our -- my exhibits and I also looked at his exhibits.

25        THE COURT:  And all are satisfied?

1          MR. NOVINS:  In order.

2          THE COURT:  Very well.  Is there anything else we

3    need to do before the jury comes in?

4          MR. MANZO:  I don't believe so, Your Honor.

5    (Requested partial transcript as follows:)

6          THE COURT:  All right, counsel, is there anything

7    further I need to take up?  Please be seated.

8          MR. MANZO:  Your Honor, you had, I believe reserved

9    on some of the judgments, the defaults.  Just wanted to get a

10   decision on that Motion for Directed Verdict from the other

11   day.

12         THE COURT:  I'm going to ask you to do this.  Having

13   received the jury's verdict, I'm going to give you ten days to

14   go home and review the verdict, consider the circumstances,

15   consider the claims.  I will tell you that there was no claim

16   that I would change from the jury's verdict.  Indeed, I think I

17   suggested to you this afternoon when I said I was reserving on

18   Dr. Lamb's intentional interference that I thought that the

19   fifth element was simply not present and that I, quite frankly,

20   I was inclined to dismiss that claim then.

21         This is an unusual case.  There are very few New

22   Jersey cases.  I'm sure the parties on the right -- on my right

23   are frustrated and unhappy.  But this is simply not a cause of

24   action which the State of New Jersey has developed very far.

25   The internet and the world of Usenet and so on has created a

1  world that is really very different from the world in which the

2  law of defamation develops.  And internet, where people use

3  aliases and so on, it's very difficult for a jury, it would

4  seem to me, and I'm certainly not in that jury room, but it

5  would seem to be very difficult for a jury to be able to apply

6  the law which was developed before there was any such thing as

7  an internet.

8        To apply the law of defamation and false light to a

9  world that operates the way this internet world of

10 communications operates.  It just doesn't fit.  It's like a

11 round peg in a square hole.  And there's nobody to blame for

12 that except the way the world has developed and the electronic

13 communications that are now the norm.  This cause of action

14 diminishes with modern technology.  I certainly am not -- this

15 is not the law.  I'm just saying that of my own reflection.  I

16 certainly didn't say it in the jury charge.  I had no intention

17 of saying it in the jury charge.

18       We tried to give the jury the law as we know it to

19 be.  But I can imagine that what I'm saying informally now

20 really hovers over those claims and that would apply no matter

21 who the person was.  It's clear to me that the lawyers for the

22 counterclaimants and third-party plaintiff worked very hard and

23 threw everything they had into trying to recover for their

24 clients; were very, very zealous on behalf of their clients.

25       But you saw the jury.  I don't know them, you don't

1  know them, they're all strangers.  They reached a verdict in a

2  relatively short period of time.  So I think we all need to

3  think about this case a little bit more and whatever you have

4  to say to me with regard to any motions, any rulings, please do

5  it within ten days simultaneously.  Thank you very much.

6          MR. MANZO:  Judge Thompson, on behalf of the

7  Osterwalds and myself, thank you very much for your wise

8  choices and decisions here.  It was not quite clear at the

9  beginning, but really, it was really a pleasure trying a case

10 in front of you.  Can't say that always, but I think I came

11 around to that idea about halfway through.  I saw where you

12 were going and I appreciate it.

13         MR. NOVINS:  And I agree with that.

14         THE COURT:  Thank you.  Thank you very much.  Mr.

15 Duncan, did you say that, too?

16         MR. DUNCAN:  Yes, I (laughter) --

17              (Hearing is adjourned at 4:52 p.m.)

18                   *  *  *  *  *

19

20

21

22

23

24

25

1      **C E R T I F I C A T I O N**

2              I, Susan Holcomb, court approved transcriber, certify

3      that the foregoing is a correct transcript from the official

4      electronic sound recording of the proceedings in the above-

5      entitled matter, and to the best of my ability.

6

7      /s/ Susan Holcomb                    Date: November 16, 2012

8      Susan Holcomb  AAERT CET **00273

9      J&J COURT TRANSCRIBERS, INC.

10

11

12

13

14

15

16

17

18

19

20

21